484 So.2d 792 (1986)
Richard T. GAVIN
v.
SUPERIOR APPLICATORS, INC. et al.
No. CA841271.
Court of Appeal of Louisiana, First Circuit.
February 25, 1986.
Writ Denied May 1, 1986.
Stephen W. Glusman, Baton Rouge, for plaintiff-appellee Richard T. Gavin.
Bryan E. Bush, Jr., Baton Rouge, for defendant-appellee Sebastien and Superior Applicators, Inc.
Allen M. Posey, Jr., Baton Rouge, for defendant-appellant Blackledge, Inc., et al.
Before LOTTINGER, COLE and CRAIN, JJ.
CRAIN, Judge.
Defendant-Appellants, Clarence Roussell, Jr., Harold Blackledge and Blackledge, Inc. appeal from a judgment rendered against them and two other defendants, Superior Applicators, Inc. and Roy Sebastian[1] in the amount of $50,550, in solido, as the sums due on five separate promissory notes. The judgment also held them liable for attorney fees in the amount of 25% of the sum due as provided in the notes. Plaintiff-Appellee, Richard T. Gavin, is the holder of the notes.
Defendants allege the following assignments of error:
(1) The trial court erred in not finding their liability was conditional;
*793 (2) The trial court erred in finding them solidarily liable;
(3) The trial court erred in awarding attorney's fees;
(4) The trial court erred in awarding excessive attorney's fees.

FACTS
Harold Blackledge and Clarence Roussell are the sole officers, and 50% owners each, of Blackledge Inc. Blackledge, Roussell and Blackledge Inc. (hereinafter defendants) allegedly owned a 40% interest in Roy Sebastians' painting and sand blasting company, an individual proprietorship, doing business as Superior Applicators Inc.[2] Superior required an injection of capital before it could begin work on several construction projects on which it had bid. The defendants introduced Gavin to Sebastian in order to interest Gavin in loaning them money. Apparently, an arrangement was made where Gavin would loan the money to Blackledge Inc. which in turn would disburse the funds to Sebastian to use on the projects.
The defendants had no control over the actual construction work done by Sebastian and/or Superior, but were to monitor the records of each project. The defendants and Sebastian/Superior all signed the five notes. Each one was for a separate loan on an individual construction job. As each job was completed, Sebastian was to turn the proceeds over to the defendants, who would in turn pay off the respective note Gavin was holding.
Superior soon encountered financial difficulty. Gavin was unable to collect money on the notes and eventually filed this suit.

CONDITIONAL LIABILITY
Defendants contend that their only liability to Gavin was to turn over whatever proceeds, if any, they received from Sebastian. These proceeds were to consist of funds Sebastian received for each contract completed less expenses and his salary. Defendants assert that their only reason for signing the notes was to guarantee Gavin that once they received the proceeds from Sebastian they would turn the money directly over to Gavin. They urge that this was agreed to between all the parties including Gavin and that it was understood that Gavin took the risk of any financial difficulties that Sebastian experienced. As proof they point to the following language inserted in the promissory notes:
The above date is conditional on the work schedule of an agreed upon construction project. Should this date be altered beyond the control of the below signing parties, this note will be renegotiated by all parties. Richard T. Gavin will be notified immediately of any such change in the schedule for the project as soon as it is known by the below signed parties.
Both parties introduced without objection parol evidence as to the intent and meaning of this paragraph. Defendants contend that it limits their liability only to having to pay if and when enough funds were generated out of the respective construction project to pay the notes. They assert that if the funds were never generated or paid to them by Sebastian, they would not be liable to repay Gavin.
Gavin contends that this language was only meant to provide for unanticipated construction delays such as those that might arise due to bad weather or labor disputes. Gavin asserts that all parties on the instrument agreed to be liable for repayment of the debts when due and repayment by defendants was not conditional. He states that he refused to loan the money to Sebastian alone, as he had only recently met him.
The trial court in written reasons specifically found that the defendants lacked credibility on this issue and that their liability was unconditional. The language of the note itself lends little support to defendants' arguments. A "renegotiation" *794 of the note, conditioned on a work schedule, is more consistent with time delay problems than with an absolution of liability on the defendants' part. This matter is essentially a credibility question. We have reviewed the record and the evidence and find no manifest error in the conclusions of the trial court. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978), Canter v. Koehring Co., 283 So.2d 716 (La.1973).

SOLIDARY LIABILITY
Defendants contend that the trial court erred in finding them liable "In Solido". They argue that liability on their part, if any, should be joint, each party being responsible only for his virile share. Their contention is based on the following language in the notes, "I (We) promise to pay to the order of...." They argue that this language does not create solidary liability on their part. We agree.
La.C.C. art. 1796 states, "Solidarity of obligation shall not be presumed. A solidary obligation arises from a clear expression of the parties' intent or from the law." In Johnson v. Jones-Journet, 320 So.2d 533 (La.1975) where several parties signed a note containing the words "We promise to pay" their liability was held to be joint not solidary. The court at page 536 stated, "It is well settled that, absent additional promissory language, the words `[W]e promise to pay' in a note signed by co-makers are insufficient to constitute the express stipulation of liability in solido required by law. In such a case the obligation is considered to be joint...."[3]
The court in a footnote went on to contrast this with a case where several co-makers sign a note containing the promissory language "I promise to pay", stating that in such case solidary liability results.
La.R.S. 10:3-118(e) provides that, "where an instrument containing the words `I promise to pay' is signed by two or more persons, they are deemed to be `jointly and severally liable' thereon." The phrase "jointly and severally liable" is a common law term interpreted by our courts to be equivalent to liability "in solido" (or more properly, solidarily obligated.) Johnson, 320 So.2d at 536, Shreveport Bank and Trust Company v. Tyler, 275 So.2d 451 (La.App. 2nd Cir.1973).
Plaintiff contends that the inclusion of the word "I" in the phrase "I (we) promise to pay" creates solidary liability, regardless of the inclusion of "(We)". Alternatively, he suggests that the addition of "(we)" makes the defendants both jointly and solidarily liable concurrently. Defendants assert that there is no clear expression of an intent on their part to be bound solidarily. They contend that the "I (We)" language was written as standard form for a blank promissory note and this is a common method of drafting blank forms, such as contracts, where the letter s is placed in parentheses and is added to a word such as person to create person(s). This gives a different reading depending on whether or not more than one person is to be referred to. We agree with defendants. Solidarity is not to be presumed. La.C.C. art. 1796. There is no clear expression of the parties' intent to be bound solidarily. Absent a clear expression, the law only creates solidarity in regard to promissory notes where the language, "I promise to pay" is used. La.R.S. 10:3-118(e). In common usage, the "I" would be read out of the sentence as more than one party was being referred to, and the pronoun "(we)" would be used. We will not presume that the language "I (We) promise to pay" with no additional language creates solidary liability.
Plaintiff cites the decision in Ford Motor Credit Co. v. Soileau, 323 So.2d 221 (La. App. 3rd Cir.1975) as being on point. In Soileau both defendants signed a note containing the following promissory language "For value received, I, We (jointly and severally) promise to pay ...". The court found their liability to be solidary. While the court referred to the term "I" as creating solidary liability, it also referred to the "joint and severally" language. Such language constitutes a clear expression of the *795 parties' intent to be bound solidarily. A similar expression is lacking in these notes. Finding merit to this assignment, the trial court erred and we amend the judgment in part to find the defendants' jointly liable.

ATTORNEY'S FEES
Assignments of error three and four both concern attorney's fees. The notes provided for an additional 25% as attorney's fees to be included if they were not paid at maturity and "[were] placed in the hands of an attorney at law for collection, or sued upon...." Appellants first contend that there existed a "genuine dispute" concerning the amount of money, if any, which was due and therefore they should not be liable for attorney's fees in spite of their contractual obligation to the contrary. The only authority cited for this proposition is National Roofing and Siding Co., Inc. v. Giaise, 434 So.2d 85 (La. App. 5th Cir., 1982) where a roofing company sued an individual to collect sums due for a reroofing job done on his home. The defendant refused to pay because of shoddy workmanship. The roofing company also attempted to collect 25% of the contract price for attorney's fees as per their contract. The trial court substantially reduced the contract price after finding numerous defects in performance by the roofing company. The court also refused to grant attorney's fees. The appellate court affirmed, finding a genuine dispute over whether the plaintiff had complied with the provisions of the contract. The fifth circuit held that it would be inequitable for the defendant to pay 25% attorney's fees to prove substantial defects of the plaintiff's work, finding that such a decree would lead to unreasonable results. We do not dispute the holding in that case. We simply find that no unreasonable or inequitable results flow from an imposition of attorney's fees in the case at hand regardless of whether a genuine dispute existed.
Finally, appellants contend that the 25% fee is excessive. This court can review the reasonableness of such a fee. Graham v. Sequoya Corp., 478 So.2d 1223 (La.1985).[4] The trial court specifically enunciated and applied the required standards as set out in Leenerts Farms, Inc. v. Rogers, 421 So.2d 216 (La.1982). We have reviewed the record and find no manifest error in the trial court's determination. Arceneaux, 365 So.2d 1330. These assignments are without merit. Accordingly, the trial court's judgment is amended to cast the defendants in judgment jointly. The decision is otherwise affirmed, appellants to pay all costs.
AMENDED AND AFFIRMED.
NOTES
[1] Sebastian did not appeal.
[2] Sebastian apparently operated under the name Superior Applicators, Inc. The defendants knew it had never actually been incorporated, nevertheless they accepted stock certificates in it.
[3] Footnotes omitted.
[4] Suit was filed January 12, 1983, prior to the effective date of the amendment to former La.C.C. art. 1935 relating to attorney's fees.