ANDREW D. TAYLOR TRUST by David L. TAYLOR III, Trustee, and Diana D. Taylor, Successor Trustee, and David L. Taylor III, Plaintiffs–Appellants (86–6287), Counter Defendants–Appellants (86–6288),

v.

SECURITY TRUST FEDERAL SAVINGS AND LOAN ASSOCIATION, INC.; et al., Defendants–Appellees (86–6287, 86–6288),

and

The Federal Savings and Loan Insurance Corporation, Plaintiff–Appellee (86–6287, 86–6288).

Nos. 86–6287, 86–6288.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 14, 1988.

Decided April 12, 1988.

L. Caesar Stair III (argued), Bernstein, Susano and Stair, Knoxville, Tenn., for plaintiffs-appellants.

Michael H. Fitzpatrick, Jenkins and Jenkins, Knoxville, Tenn., for defendants-appellees.

Charlotte M. Kaplow (argued), Reston, Va., for plaintiff-appellee.

Charles A. Wagner, III, Wagner, Myers and Sanger, Knoxville, Tenn., for counter-defendants-appellants.

Before MERRITT and RYAN, Circuit Judges, and BROWN, Senior Circuit Judge.

BAILEY BROWN, Senior Circuit Judge.

Plaintiffs, David L. Taylor III (Taylor) and the Andrew D. Taylor Trust (Trust) appeal the judgment by the district court awarding $150,000 to appellee Federal Savings and Loan Insurance Corporation (FSLIC) in this action involving the validity of two collateral pledge agreements executed by Taylor. Taylor and the Trust contend that the district court erred in holding the collateral pledge agreements to be valid and binding against a savings account of Taylor and a trust savings account opened as such by Taylor for his minor son, Andrew D. Taylor. It is contended that the federal court lacked subject matter jurisdiction and that the pledges failed for lack of consideration. It is further contended, on behalf of the Trust, that the trust account was irrevocable and that Taylor did not have the authority, under the terms of the Trust, to pledge the trust account. Because we determine that these arguments fail, we affirm the judgment for FSLIC.

## I. Background

Taylor was the president, chief executive officer, and a director of Security Trust Savings and Loan Association, Inc. (Security Trust), from 1978 until June 20, 1984. Security Trust was a Tennessee state-chartered, federally-insured savings and loan.

On March 3, 1983, Taylor opened a Security Trust savings account in his name as trustee for his minor son, Andrew D. Taylor. This account was funded from an existing account in the name of Taylor as custodian for his son. At the time the trust account was established, Security Trust had color-coded and pre-printed signature cards for various trust arrangements, including revocable and irrevocable trusts. Taylor knew of the existence of both the revocable and irrevocable trust cards. All accounts previously created by Taylor for his son's benefit had been opened on discretionary revocable trust account cards, except for the custodian account, which was created in joint tenancy.

Mitzi Griffin, an employee in charge of new accounts at Security Trust, testified that she was directed by Taylor or his secretary to prepare a *revocable* trust signature card. Taylor signed the front of the card, which pertains to the authority of the trustee. He did not sign, as settlor, the back of the card regarding the revocable nature of the trust, but the front side contained language expressly incorporating the terms on the reverse side. Taylor testified that he intended the account to be irrevocable, that he did not sign the back of the card because he intended the funds to be beyond his control and that somehow the wrong signature card was used. The trial court found this testimony to be incredible because Taylor, as president and chief executive officer of Security Trust, was knowledgeable about the difference between these two cards. Furthermore, Taylor never asked that the designation of the account be changed.

A subsequent document entitled "Trust Agreement," dated March 10, 1984, and signed by Taylor and his former wife, Diana, states that it creates a trust for their son. The Trust Agreement provides that the assets to be held in trust are "certain property presently belonging to me [Taylor]." It is not disputed that Taylor intended to place the trust account at Security Trust in the trust created by this Agreement, although the Agreement described the trust account only by referring to "cash on hand $110,934.61," the amount in the trust savings account on March 2, 1984. Paragraph 7 of the Trust Agreement provides that the settlor reserved "no right to amend or revoke this instrument." This Trust Agreement was never placed in the records of Security Trust.

On May 30, 1984, Taylor executed two collateral pledge agreements, each explicitly pledging to Security Trust the trust account of his minor son and the individual account of Taylor. Taylor signed the agreements, however, without an express indication that he signed them as trustee. Taylor testified that he told Randy Roberson, then vice president and manager of Security Trust, to prepare agreements pledging only his personal account. Taylor further testified that he not only did not

sign as trustee, but that he did not intend to pledge the trust account and did not notice that the trust account was listed as collateral on the pledge agreements. Roberson testified that Taylor instructed him to list the trust account on the pledge agreements. Furthermore, as the trial court noted, the facts suggest that Taylor had the intent to pledge the trust account, because the pledged amount was $150,000 and Taylor had only about $64,000 in his personal account at the time. Thus, part of the approximately $113,000 in the trust account was needed to cover the amount of the pledge. Therefore, the trial court found, supported by substantial evidence, that Taylor fully intended for both accounts to be listed and pledged.

The collateral pledge agreements were back-dated to April 23, 1984, and were each in the amount of $150,000. They were executed to secure advances made by Security Trust between April 5 and 25, 1984, to two Hawaiian real estate joint ventures (SAJE Ventures II and ESAR Ventures) under lines of credit. These advances were made even though the lines of credit had exceeded the agreed combined cap and the Federal Home Loan Bank Board (FHLBB) had, on March 29, 1984, prohibited the funding of any commercial loans by Security Trust, including these lines of credit. The FHLBB conducted a surprise audit of Security Trust on May 30, 1984. Taylor executed the back-dated collateral pledge agreements that same day after Roberson informed him of the audit. The trial court found, supported by Taylor's testimony, that Taylor pledged the accounts "in an attempt to mollify the FHLBB examiner." The FHLBB examiner's report indicated that the value of the pledges possibly could be reduced to $63,952.00, the amount of Taylor's individual account, because Taylor may not have had the authority to pledge the trust account as collateral.

Shortly thereafter, Taylor was discharged by the Board of Directors of Security Trust. Subsequently, the Hawaiian entities defaulted on their loans and Security Trust claimed the pledged accounts.

On February 4, 1985, this action was commenced in Chancery Court for Anderson County, Tennessee, by Taylor, as trustee and individually, against Security Trust. Taylor sought to have the collateral pledge agreements declared invalid and to have Security Trust release the pledged accounts. Security Trust counterclaimed, seeking a declaration that it was entitled to funds in the accounts.

While the state court action was still pending, Security Trust was declared insolvent by the FHLBB. Pursuant to 12 U.S. C. § 1729(c)(1)(B), the FHLBB appointed FSLIC as receiver, and FSLIC as receiver succeeded to all claims against Taylor and the Trust. As receiver, FSLIC transferred most of Security Trust's assets to Security Trust Federal Savings and Loan Association, Inc. (Security Trust Federal), a newly-organized and federally-chartered savings and loan. FSLIC as receiver then sold to FSLIC in its corporate capacity assets not transferred to Security Trust Federal, including claims against Taylor and the Trust for recovery on the two collateral pledge agreements.

On December 18, 1985, FSLIC as receiver moved to intervene in the state court proceedings as counterplaintiff and was allowed to intervene. Security Trust Federal was also added as a party. On December 30, 1985, FSLIC petitioned, pursuant to 12 U.S.C. § 1730(k)(1), to remove the action to federal court, and the petition was granted. A motion for remand was denied. FSLIC also successfully moved to amend the style of the case to reflect that FSLIC in its corporate capacity owned the counterclaim against Taylor and the Trust, and that FSLIC as receiver and in its corporate capacity were proper defendants.

By consent of the parties, the matter was referred to a magistrate, under 28 U.S.C. § 636(c). Diana Taylor, Successor Trustee, was substituted as a party plaintiff and Caesar Stair III was appointed guardian ad litem for the minor beneficiary, Andrew D. Taylor. The case was tried by the magistrate without a jury on September 19 and 26, 1986. The trial court held that the collateral pledge agreements were valid

and binding upon Taylor and the Trust, and the accounts were ordered frozen. On November 12, 1986, judgment was entered for FSLIC in the amount of $150,000 [1] and remaining funds in the accounts were ordered returned to the owners. Taylor and the Trust appeal.

## II. Subject Matter Jurisdiction

■ Title 12 U.S.C. § 1730(k)(1) provides that the federal district court shall have original subject matter jurisdiction over any civil action to which FSLIC is a party. The section provides in relevant part that

(B) any civil action, suit, or proceeding to which the Corporation [FSLIC] shall be a party shall be deemed to arise under the laws of the United States, and the United States district courts shall have original jurisdiction thereof, without regard to the amount in controversy; and (C) the Corporation may, without bond or security, remove any such action, suit, or proceeding from a State court to the United States district court for the district and division embracing the place where the same is pending by following any procedure for removal now or hereafter in effect: *Provided,* That any action, suit, or proceeding to which the Corporation is a party in its capacity as conservator, receiver, or other legal custodian of an insured State-chartered institution and which involves only the rights or obligations of investors, creditors, stockholders, and such institution under State law shall not be deemed to arise under the laws of the United States.

Taylor argues that the proviso applies because the only claim against him that FSLIC in its corporate capacity received from FSLIC in its receivership capacity was for Taylor's malfeasance or misconduct as a former officer or director of Security Trust. Therefore, since FSLIC has disavowed such a claim in this litigation, Taylor argues that FSLIC is no longer a proper party. Accordingly, he argues, there is no subject matter jurisdiction un-

der the statute and remand to state court for proceeding under state law is required.

We determine that federal subject matter jurisdiction exists because the proviso of section 1730(k)(1) does not apply. The proviso withdraws jurisdiction if FSLIC is a party solely as receiver of a state-chartered institution and if the dispute involves only the rights or obligations of creditors, investors, or shareholders and the institution.

First, FSLIC is a party in its corporate capacity as owner of *all* claims against Taylor, not just those arising from breach of his fiduciary duty as an officer or director of Security Trust. The Receiver's Agreement between FSLIC as receiver and FSLIC in its corporate capacity provides that FSLIC purchased all assets not purchased by Security Trust Federal, including "*any* known or unknown claim, demand, cause of action or judgment against ... present or former controlling persons, directors, [or] officers" of Security Trust "arising out of *any* act or omission of such persons" with respect to Security Trust. (Emphasis added.) Therefore, the proviso is inapplicable because FSLIC in its corporate capacity is asserting its own rights in this action. Accordingly, the federal district court had subject matter jurisdiction. *See FDIC v. Ashley,* 585 F.2d 157 (6th Cir.1978) (analogous case involving substantially identical Federal Deposit Insurance Corporation statute).

Second, the proviso does not apply because of the presence of Security Trust Federal, a newly-chartered federal institution, as a party as holder of the accounts at issue. This result is similar to the one reached by the Fifth Circuit in *North Mississippi Savings and Loan Ass'n v. Hudspeth,* 756 F.2d 1096 (5th Cir.1985), *cert. denied,* 474 U.S. 1054, 106 S.Ct. 790, 88 L.Ed.2d 768 (1986). In *Hudspeth,* FSLIC was appointed receiver of a state-chartered savings and loan and transferred most of the assets to a new federally-chartered savings and loan. When this new federal institution was joined as a defendant, FSLIC

---

1. FSLIC seeks one recovery for $150,000 although each collateral pledge agreement was in     this amount.

removed the case to federal court. The court of appeals held that subject matter jurisdiction existed because the joining of the new federal institution required the court to determine the rights or obligations of one other than a creditor, investor, stockholder, or state institution. *Id.* at 1100. Therefore, for a second reason, the proviso is inapplicable and federal jurisdiction exists.

### III. The Taylor Account

■ Taylor argues that the collateral pledge agreements are unenforceable against his personal account because the pledges fail for lack of consideration. We need not decide if new consideration was given by Security Trust for the pledge agreements. The trial court held, and we agree, that traditional rules of contract law are not applicable to the present case because FSLIC has special status under federal substantive common law applicable under 12 U.S.C. § 1730(k)(1). *FDIC v. Armstrong*, 784 F.2d 741, 744 (6th Cir.1986). Under the federal common law doctrine enunciated in *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), certain defenses usually available in contract actions would not be available to Taylor if he lent himself to a scheme or arrangement that deceived or was likely to deceive a federal regulatory authority. *FDIC v. Investors Assocs. X, Ltd.*, 775 F.2d 152 (6th Cir.1985); *FSLIC v. Third National Bank*, 173 F.2d 192 (6th Cir.1949). Accordingly, Taylor's placing the collateral pledge agreements in the loan files bars his defense of lack of consideration. This is particularly true since Taylor back-dated the pledge agreements and thus they appear to be entered into contemporaneously with advances on the lines of credit.

Taylor argues, however, that FSLIC was not in fact deceived because it had knowledge of the lack of consideration defense before it acquired the claim. FSLIC's knowledge, however, does not make the *D'Oench* doctrine inapplicable. *Langley v. FDIC*, —— U.S. ——, 108 S.Ct. 396, 402, 98 L.Ed.2d 340 (1987); *Investors Assocs. X*, 775 F.2d at 155–56. Moreover, Taylor's intent or lack of intent to mislead a savings and loan examiner by executing the collateral pledge agreements and placing them in the files of Security Trust is irrelevant. *Investors Assocs. X*, 775 F.2d at 155.[2] Therefore, the collateral pledge agreements are valid as against Taylor's individual account and FSLIC is entitled to the funds in that account.

### IV. The Andrew D. Taylor Trust Account

The trial court found that the Trust lent itself to a transaction likely to deceive FSLIC and FHLBB by virtue of Taylor's actions as settlor and trustee. Therefore, the court held that under the *D'Oench* doctrine the Trust could not raise the defense of lack of consideration. The Trust contends that it did not lend itself to a transaction likely to deceive because Taylor did not purport to execute the collateral pledge agreements in his representative capacity as trustee, and thus was not acting for the Trust. Furthermore, the Trust argues, any attempt by Taylor to act for the Trust in pledging the trust funds was without authority to do so and therefore the Trust for this reason, did not lend itself to the transaction and so may rely on the defense of lack of consideration.

The Trust also claims that the Trust is, simply stated, not bound by the pledge agreements because Taylor had no authority to pledge the trust account to secure the indebtedness of a third party. This de-

---

**2.** Taylor argues that FSLIC is an ordinary assignee of a cause of action because it intervened as successor in interest to Security Trust while this case was pending. Relying on *FDIC v. Kessler*, 220 So.2d 391 (Fla.Dist.Ct.App.1969), Taylor contends that FSLIC cannot use its special status to change the law of the case. *Kessler* is inapposite because the FDIC was an assignee, not a purchaser, of the notes on which the bank originally brought suit. Therefore, the *Kessler* court reasoned that neither 12 U.S.C. § 1823(e) (codification of *D'Oench* for the FDIC) nor *D'Oench* applied because there was no evidence that the notes were acquired as security for a loan or by purchase. Here, FSLIC took the claim by appointment as receiver, and then FSLIC in its corporate capacity *purchased* the claim.

fense is a real defense to the formation of a contract and renders the contract void *ab initio*, rather than merely voidable. A real defense would take the agreements out of the *D'Oench* doctrine so far as the Trust is concerned. *See Langley*, 108 S.Ct. at 402. In support of this contention, the Trust argues that the original trust account was irrevocable, but if it was revocable, it was revoked when the subsequent irrevocable trust was created and the account placed in that trust; and, further, under neither trust did the trustee have the authority to pledge the trust assets. Accordingly, Taylor's powers as trustee of the trust account and the nature of the trust must be examined to determine whether or not the collateral pledge agreements are enforceable against the Trust.

 The trial court held, supported by substantial evidence, that Taylor intended to create a revocable trust and that the trust account created in 1983 was a revocable discretionary trust. The trust account was a so-called "Totten Trust" or tentative trust. *See Restatement (Second) of Trusts* § 58 (1959). Since 1959, Tennessee law has recognized such a trust. *Leader Federal Savings and Loan Ass'n of Memphis v. Hamilton*, 330 S.W.2d 33 (Tenn.Ct. App.1959) (quoting *Restatement of Trusts* §§ 57–58). *See* Tenn.Code Annot. § 45-3-511 (1980) (protection of savings and loan associations when payment made to named beneficiary after death of depositor of "Totten Trust" in absence of other terms for valid trust). Under the terms of the trust account in *Leader Federal*, substantially identical to those on the signature card in the present case, the donor "retained full, complete, unlimited and unrestricted control of the trust fund up until the very moment of her death. She had the unrestricted prerogative to terminate the trust agreement in toto simply by withdrawing all of the funds at any time she desired and expending them for any purpose she desired regardless of the wishes or welfare of the beneficiary...." *Leader Federal*, 330 S.W.2d at 40. Because such a trust account is revocable at will in the absence of other terms to the contrary, any act by the grantor/depositor, regardless of

the form, that manifests an intent to revoke the trust effectively revokes the trust. *Restatement (Second) Trusts* § 58, comment e (1959).

The specific terms of the Taylor trust account signature card provided that:

> (1) The trustees are authorized to hold, manage, pledge, invest and reinvest said funds in their sole discretion, or at the discretion of any one of them acting; (2) The undersigned grantor or grantors, or either of them, reserve the right to revoke in part or in full at any time and any partial or complete *withdrawal* by the original trustees or any one of them, if they or he be both or one of the grantors, shall be a revocation by the grantor to the extent of such withdrawal, but *no other revocation shall be valid unless written notice by both or either of such grantees is given to the institution named on the reverse side.*

(Emphasis added.)

Taylor was the grantor and original trustee. Although he did not sign the side of the account signature card on which the above terms were printed, these terms were incorporated by reference on the side that he did sign. Given the evidence at trial, including testimony of the Security Trust employee who prepared the signature card, the trial court was supported by substantial evidence in finding that Taylor intended to and did establish a revocable trust. We interpret the trial court's finding to be that the terms of the trust are those provided on the signature card. Therefore, any withdrawal by Taylor revoked the trust to the extent of the withdrawal, but all other acts of revocation were nullities unless Security Trust received notice.

Evidence at trial clearly established that Security Trust had no notice of the 1984 Trust Agreement. Nor did Taylor withdraw the funds in the trust account at Security Trust. Accordingly, under the terms of the trust account, Taylor did not effectively revoke the revocable trust account by listing its funds as an asset of the

new "irrevocable" trust established by the 1984 Trust Agreement.

At oral argument, counsel for the Trust argued that the collateral pledge agreements were ineffective against the Trust because the pledge did not meet the terms of revocation stated on the signature card. Security Trust, however, did have notice of the collateral pledge agreements because it was a party to these agreements (Roberson signed as vice president of Security Trust) and the agreements were in the files of the institution. The pledge of the entire account amounted to a revocation of the trust to the extent necessary to effectuate the pledge; Taylor had the authority to revoke the trust and the notice requirement regarding revocation was met. By executing the pledge agreements, Taylor was exercising his right of revocation of the trust; therefore, the pledge agreements effectively pledged the savings account as Taylor's own property. Taylor was pledging these assets for the benefit of Security Trust, or for the Hawaiian borrowers, or for his own benefit as president, and not for the benefit of the Trust.

Counsel for the Trust also argued that the pledge agreements were ineffective against the Trust because Taylor did not sign in his representative capacity as trustee.[3] Taylor did not have to sign as trustee, however, because he was not acting as trustee on behalf of the Trust. Rather, he was acting on his own behalf as grantor/settlor with rights of revocation.[4]

The result is that *D'Oench* applies, and therefore the Trust does not have a de-fense of lack of consideration and Taylor's execution of the pledge agreements effectively pledged the assets of the trust account. Accordingly, we AFFIRM the judgment of the district court awarding $150,-000 to FSLIC.

**3.** The collateral pledge agreements name the Trust ("Andrew D. Taylor (Minor), David L. Taylor, Trustee"), but Taylor did not write "by" or "trustee" when signing his name. Plaintiffs argue, therefore, that Taylor did not sign the collateral pledge agreements in his representative capacity as trustee. In support, they cite the Uniform Commercial Code as codified at Tenn.Code Ann. 47–3–401(1) and 47–3–403(2). Article 3 of the Code, however, is inapplicable to our discussion because the sections cited are limited to negotiable instruments. The collateral pledge agreements in question are not negotiable: they were not payable to order or bearer, not payable on demand or at a definite time, nor unconditional promises to pay a sum certain as required by 47–3–104(1)(b), (c), and (d).

**4.** Because we determine that the 1984 Trust Agreement was ineffective to revoke the 1983 trust account, and that the collateral pledge agreements did effectively revoke the trust account, we need not reach the issue of the nature of the 1984 Trust Agreement.

Although the trial court erred in its characterization of the trust created by the 1984 Trust Agreement as revocable and a sham because it provided that the trust could be terminated by Taylor and the assets distributed to his minor son, we can affirm its holding that the collateral pledge agreements were valid against the trust assets for reasons stated herein. *See, e.g., Russ' Kwik Car Wash, Inc. v. Marathon Petroleum Co.,* 772 F.2d 214, 216 (6th Cir.1985).