## FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION, Plaintiff-Appellee,

v.

### Mary Anne MURRAY, et al., Defendants,

**Alice Jayne Glasser, wife of/and Gerry E. Hinton, Marliene Revon Salvaggio, wife of/and Philip M. Salvaggio, Defendants–Appellants.**

### No. 88–3021.

United States Court of Appeals, Fifth Circuit.

Sept. 6, 1988.

Rehearing Denied Oct. 5, 1988.

Daniel A. Smith, New Orleans, La., for Glasser.

G. Brice Jones, Slidell, La., for Salvaggio.

Nathan T. Gisclair, Jr., and Stephen P. Schott, New Orleans, La., for plaintiff-appellee.

Before GEE, DAVIS and SMITH, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

The makers of promissory and collateral mortgage notes appeal the district court's ruling on summary judgment that Federal Savings and Loan Insurance Corp. (FSLIC) could recover on the notes despite a number of defenses, including one based on evidence that Alliance Federal Savings and Loan Association (Alliance), the savings and loan holding the notes, had altered them fraudulently. We affirm.

## I.

Four married couples formed a general partnership called the Eastway Group to acquire real estate in Louisiana for commercial development. To finance this purchase, they borrowed $3.6 million in Au-

gust 1984 from Alliance. All borrowers signed a $3.6 million promissory note in their individual capacities; this note was secured by a $5 million collateral mortgage on the purchased property. The borrowers admit receiving the proceeds from the $3.6 million loan. The Hintons eventually sold their interest in the partnership to the remaining partners, who agreed to indemnify them from liability on this loan.

In January 1985, the Federal Home Loan Bank Board (FHLBB) appointed the FSLIC receiver of Alliance, and through a purchase and assumption transaction FSLIC became the holder of this note. When FSLIC filed suit against the makers, two of the four couples who signed the note filed individual bankruptcies. The two remaining couples, the Hintons and the Salvaggios, defended on several grounds: (1) they thought the Eastway Group would be liable for the note rather than them personally; (2) Alliance misrepresented the property's value and violated several oral side agreements; (3) they had signed several blank signatory pages that Alliance later misused; and (4) Alliance fraudulently and materially altered the notes after the makers signed them. Alliance did alter the notes. The defendants made the following pretrial stipulation:

> The hand note was ... altered after the closing. Mary Anne Murray Lepore and John Lepore were made restrictively liable in the amount of $1,225,937.37, Alice Jayne Glaser Hinton and Gerry E. Hinton were made restrictively liable in the amount of $984,189.00, Marliene Salvaggio and Philip M. Salvaggio were made restrictively liable in the amount of $256,500.00, and Doris Schwartz Smart and Donald R. Smart were made restrictively liable in the amount of $1,175,-592.00. Again, each wife was made restrictively liable "in conjunction with" her husband for the quoted amounts.

The parties agree that Alliance altered the notes without the makers' knowledge or permission, apparently in an attempt to deceive the federal regulatory authorities. Alliance may have sought to bolster the appearance of the note to bank examiners by limiting each debtor to his net worth. In addition, the alteration may have permitted Alliance to claim compliance with FHLBB restrictions on the dollar amount Alliance could loan to any one borrower. The parties suggest that Alliance altered the notes because the single $3.6 million loan to the Eastway Group exceeded that limit, and that Alliance's alterations changed the note in FHLBB's eyes from one loan for over three million dollars to four separate loans well within the FHLBB restrictions.

The defendants argued that the fraudulent and material alterations to the notes rendered them unenforceable under Louisiana law. See La.Rev.Stat.Ann. § 10:3–407. The district court nonetheless granted FSLIC's motion for summary judgment on grounds that federal common law precluded the defendants from asserting this defense against FSLIC. The court found the Hintons and Salvaggios solidarily liable to FSLIC for the note's entire amount. Finally, the court found that the Salvaggios were bound to indemnify the Hintons for their share of the judgment under their contract of sale of the Hintons' partnership interest.

The Salvaggios and the Hintons appeal the summary judgment in favor of FSLIC and the imposition of solidary liability. The Salvaggios appeal the indemnification order. We address each argument in turn.

## II.

### A.

In reviewing summary judgments, we must determine whether the record discloses no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

### B.

The Supreme Court held in *D'Oench, Duhme & Co., Inc. v. Federal Deposit Ins. Corp.*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), that secret agreements designed to deceive creditors or the

public authority or tending to have that effect could not be asserted as a defense against the FDIC suing in its corporate capacity to collect a note. The case law that has developed since *D'Oench* has extended the protections afforded FDIC when it acquires a failed bank's assets. See *Federal Deposit Ins. Corp. v. Wood*, 758 F.2d 156 (6th Cir.), *cert. denied*, 474 U.S. 944, 106 S.Ct. 308, 88 L.Ed.2d 286 (1985); *Gunter v. Hutcheson*, 674 F.2d 862 (11th Cir.), *cert. denied*, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982). Congress codified the *D'Oench* holding for FDIC acting in its corporate capacity. 12 U.S.C. § 1823(e).

While neither Congress nor the Supreme Court has extended these protections to FSLIC, we see no reason to treat these regulatory authorities differently. We agree with the Sixth Circuit that *D'Oench* and its progeny protect FDIC and FSLIC alike against arrangements "likely to deceive a federal regulatory authority." *Taylor Trust v. Security Trust Fed. Savings & Loan Ass'n, Inc.*, 844 F.2d 337, 342 (6th Cir.1988).

In *Taylor* the Sixth Circuit applied *D'Oench* to FSLIC, reasoning that "traditional rules of contract law are not applicable to the present case because FSLIC has special status under federal substantive common law...." *Id.* at 342. Thus, the court rejected a savings and loan president's lack of consideration defense to FSLIC's action to enforce two collateral pledge agreements against his personal account. The court concluded that the president could not rely on lack of consideration because he had participated in a deceptive scheme of backdating the pledge agreements and placing them in the loan files. *Id.*

We too will analyze the appellants' arguments against FSLIC subject to the limitations of the *D'Oench* doctrine. We find this appropriate because FSLIC does for savings and loans what FDIC does for banks. Compare 12 U.S.C. § 1823(c)(2)(A) (authorizing FDIC to arrange purchase and assumption transactions for banks) *with* 12 U.S.C. § 1729(f)(2)(A) (authorizing FSLIC to arrange purchase and assumption trans-

actions for savings and loans). Given this parallel in statutory missions, the Court's reasoning in *D'Oench* encompasses FSLIC as well:

> [I]t is the "evil tendency" of the [deceptive] acts to contravene the policy governing banking transactions which lies at the root of this rule....
>
> Those principles are applicable here because of the federal policy evidenced in this Act to protect [FDIC], a federal corporation, from misrepresentations made to induce or influence the action of [FDIC], including misstatements as to the genuineness or integrity of securities in the portfolios of banks which it insures or to which it makes loans.

*D'Oench*, 315 U.S. at 459, 62 S.Ct. at 680 (citation omitted).

### C.

Appellants defend enforcement of the promissory note on several grounds.

■ The appellants argue first that they intended the partnership, Eastway Group, to borrow the money from Alliance and own the real estate, not the individual partners. They claim that they first learned that the notes rendered them personally liable when FSLIC filed suit. In short, they contend that they never intended to assume personal obligations.

This argument is frivolous. The promissory and collateral mortgage notes, which appellants admit they signed, make no reference to the Eastway Group. Appellants signed the hand note—the critical instrument—individually as makers. They suggest no reason, and we know of none, that would permit them to introduce parol evidence to vary the note's terms. *See Cowley Corp. v. Shreveport Packing Co., Inc.*, 440 So.2d 1345, 1351 (La.Ct.App.1983), *writ denied*, 444 So.2d 122 (La.1984); *Jefferson Securities Co. v. Benoit*, 92 So.2d 487, 488 (La.Ct.App.1957).

■ Second, appellants assert that they signed certain signature pages in blank and that these signatures were later appended to documents different from the ones the makers intended. Appellants are clearly

precluded from asserting this defense against FSLIC under our decision in *Federal Deposit Ins. Corp. v. McClanahan*, 795 F.2d 512, 516 (5th Cir.1986). In *McClanahan*, we held that a maker who signed a blank promissory note and delivered it to a bank officer was estopped to assert failure of consideration or fraud in the inducement against FDIC after the bank officer filled in the note for $62,500 but never paid the proceeds to McClanahan. We stated that "... McClanahan, rather than the FDIC or the innocent depositors or creditors of the failed bank, must bear the consequences of his unfortunate involvement.... Even assuming McClanahan was not in complicity with [the swindler,] ... his conduct can only be characterized as reckless." *Id.* at 516.

The makers here acted just as recklessly by signing blank signature pages. And unlike the hapless Mr. McClanahan, these makers actually received the loan proceeds. Appellants have provided no justification for burdening Alliance's depositors or creditors with the consequences of their recklessness. As did McClanahan, the appellants lent themselves " 'to a scheme or arrangement whereby the [appropriate] banking authority ... was or was likely to be misled.' " *Id.* at 517 (quoting *D'Oench*, 315 U.S. at 460, 62 S.Ct. at 681).

In their next attack, appellants contend that Alliance misrepresented the property's value and misrepresented that Alliance or an affiliate had received an equity interest in the property. Appellants also contend that Alliance violated oral agreements to (1) fund additional loans or extend the term of the interest reserve; and (2) release the Hintons from their liability after they sold their share of the partnership.

■ Appellants' argument that Alliance's factual misrepresentations provide them with a defense fails under the Supreme Court's analysis in *Langley v. FDIC*, — U.S. —, —, 108 S.Ct. 396, 402, 98 L.Ed.2d 340, 348 (1987), in which the Court compared alleged misrepresentations to *D'Oench's* invalid secret agreement. The Court stated,

> Certainly, one who signs a facially unqualified note subject to an unwritten and unrecorded condition ... has lent himself to a scheme or arrangement that is likely to mislead the banking authorities, whether the condition consists of performance of a counter promise (as in *D'Oench, Duhme*) or of the truthfulness of a warranted fact.

*Id.*

Alliance's alleged oral agreements to fund additional loans and to release the Hintons from liability on the notes are simply secret side agreements that the Court invalidated almost fifty years ago in *D'Oench*, 315 U.S. at 460, 62 S.Ct. at 680. The district court correctly rejected these defenses.

Finally, appellants defend enforcement of the note because Alliance, without authority, added a phrase after each name limiting each maker's liability on the hand note to a specific amount.[1] Appellants argue that Louisiana commercial law provides an absolute defense because in the hands of anyone but a holder in due course, "alteration [of a note by a] holder which is both fraudulent and material discharges any party whose contract is thereby changed unless that party assents." La. Rev.Stat.Ann. § 10:3–407(2)(a). A subsequent holder in due course, however, "may in all cases enforce the instrument according to its original tenor." *Id.*

---

1. Appellants also contend that Alliance altered the terms of its collateral mortgage note. However, we reach only the alleged hand note alterations because the collateral mortgage note does not directly evidence an existing debt. Instead, it creates a mortgage note for a fictitious debt that can be pledged as collateral security for a real debt. *Texas Bank of Beaumont v. Bozorg*, 457 So.2d 667, 671 (La.1984). The collateral mortgage is commonly used with financing in which the maker draws the loan proceeds in stages. The collateral note and mortgage are made for the full amount of the line of credit extended by the lender. This is then pledged as security for a debt, usually represented by a separate hand note. This seemingly fictitious transaction is a Louisiana credit device that lenders use to obtain a lien on property effective on the date the mortgage is executed for advances not yet made, but which the lender may make in the future.

§ 10:3–407(3). Because we determine that FSLIC has at least the rights of a holder in due course when it acquires a negotiable instrument in a purchase and assumption transaction, appellants cannot use Alliance's alterations to defeat FSLIC's enforcement rights.

■ A holder in due course takes an instrument for value, in good faith, and without notice of any defense against it or claims to it. U.C.C. § 3–302(1): La.Rev. Stat.Ann. § 10:3–302(1). FSLIC does not meet the technical requirements of a holder in due course in this case because it acquired these notes in bulk through a purchase and assumption transaction, rather than in the normal course of business. U.C.C. § 3–302(3)(c); La.Rev.Stat. § 10:3–302(3)(c); see FSLIC v. Hsi, 657 F.Supp. 1333, 1336–37 (E.D.La.1986). Nonetheless, the sensitive federal interests implicated when FSLIC rescues an insolvent savings and loan lead us to conclude that FSLIC should enjoy at least holder in due course status as a matter of federal common law.

Most of the case law developed under D'Oench has in effect extended holder in due course status to federal banking regulators in purchase and assumption situations. Many of these cases, however, have considered only whether the maker could assert a particular personal defense against FDIC without reference to a broader legal rule. See, e.g., FDIC v. Leach, 772 F.2d 1262, 1267 (6th Cir.1985) (failure of consideration defense not available against FDIC); FDIC v. Gulf Life Ins. Co., 737 F.2d 1513, 1517 (11th Cir.1984) (waiver, estoppel, and unjust enrichment defense not available against FDIC); Gunter, 674 F.2d at 869 (fraud defense not available against FDIC); FDIC v. Ohlson, 659 F.Supp. 490, 492 (N.D.Iowa 1987) (mental incapacity defense not available against FDIC).

But several other courts have either held or suggested that FDIC enjoys the rights of a holder in due course. FDIC v. Cremona Co., 832 F.2d 959, 964 (6th Cir.1987), cert. dismissed sub nom., Gonda v. FDIC, —— U.S. ——, 108 S.Ct. 1494, 99 L.Ed.2d

879 (1988). Wood, 758 F.2d at 161; FDIC v. Armstrong, 784 F.2d 741, 745 (6th Cir. 1986); FDIC v. Hatmaker, 756 F.2d 34, 38 n. 5 (6th Cir.1985); FDIC v. Eagle Properties, Ltd., 664 F.Supp. 1027, 1036 (W.D.Tex. 1985). The courts recognize that banking regulators faced with rescuing a shaky institution can choose to: (1) liquidate the institution and pay the depositors their insured amounts; or (2) arrange a purchase and assumption transaction, under which another institution buys and reopens the failed one with no service interruptions and no depositor losses. Wood, 758 F.2d at 160–61. Purchase and assumption transactions provide an attractive option because they operate quickly, usually at lower cost to the government, and with less damage to depositor confidence. See Wood, 758 F.2d at 160–61.

The authority's ability to tally a failing institution's assets and liabilities quickly and accurately lies at the heart of deciding to arrange a purchase and assumption deal, and in carrying out such a transaction. However, the authority's efforts to accomplish this transaction are thwarted if it must guess at the value of the institution's notes in light of various potential personal defenses available to the debtors. Wood, 758 F.2d at 161; see Gulf Life, 737 F.2d at 1517; Gunter, 674 F.2d at 870; Gilman v. FDIC, 660 F.2d 688, 695 (6th Cir.1981).

Thus, providing FSLIC with at least the status of a holder in due course promotes the necessary uniformity of law in this area while it counters individual state laws that would frustrate a basic FSLIC objective: promoting confidence and stability in financial institutions. See United States v. Kimbell Foods, Inc., 440 U.S. 715, 728–29, 99 S.Ct. 1448, 1458–59, 59 L.Ed.2d 711 (1979); Gunter, 674 F.2d at 868–69. Moreover, clothing FSLIC with at least holder in due course status does not trample commercial expectations of note makers such as appellants. See Kimbell Foods, 400 U.S. at 729, 99 S.Ct. at 1459. A maker must anticipate that his note may be transferred to a holder in due course; the maker therefore suffers no prejudice if the FSLIC

is granted those rights. See *Wood*, 758 F.2d at 161; *Gunter*, 674 F.2d at 872.

Denying holder in due course status to FSLIC in this case also would create an unjustified windfall to the maker, *see Wood*, 758 F.2d at 160. Appellants' defense, if allowed, would absolutely bar enforcement of the note against the makers and would relieve them of their obligation to repay the $3.6 million they received. Any sums these appellants are excused from repaying comes at the expense of either the failed institution's depositors, its other creditors, or the taxpayers. *See id.*

Finally, a uniform rule such as this serves the goals of predictability and rationality more effectively than the alternative of invalidating individual defenses as they arise. Establishing at least holder in due course status for FSLIC allows it, the public and the courts to draw on a well-developed body of commercial law when determining which state law defenses are clearly unenforcible against FSLIC. Accordingly, we look to the Model Uniform Commercial Code for the substance of this uniform standard, and to "those cases which best supplement the UCC and further its purposes and design." *United States v. Unum*, 658 F.2d 300, 304 n. 2 (5th Cir.1981).

Louisiana law and the model UCC produce the same outcome in this case. Giving holder in due course status to FSLIC bars appellants' alteration defense. U.C.C. § 3–407(2)(a); La.Rev.Stat. § 10:3–407(2)(a). Thus, we hold that FSLIC is entitled to recover against the makers according to the terms of the note as it was originally signed.

### D.

■ Appellants also appeal the district court's imposition of solidary liability against them.[2] The promissory note provides that "I, we, or either of us promise to pay ..." Appellants contend that this language creates joint, but not solidary, liability under Louisiana law, which the parties agree controls the disposition of this issue. They rely on *Gavin v. Superior Applicators, Inc.*, 484 So.2d 792 (La.Ct.App.), *writ denied*, 487 So.2d 439 (La.1986), in which the court held that the formulation "I(we) promise to pay" imposed joint liability.

*Gavin* does not control appellants' case. The court in *Gavin* found that the

> "I(we)" language was written as standard form for a blank promissory note and that this is a common method of drafting blank forms, such as contracts, where the letter s is placed in parentheses and is added to a word such as person to create person(s). This gives a different reading depending on whether or not more than one person is to be referred to.

*Id.* at 794.

The district court relied on *Chaffe, Brother & Son v. Thornton, Edwards & Robinson*, 28 La.Ann. 837 (1876), which imposed solidary liability on makers of a note bearing the words "we, or either of us, promise to pay ..." We agree with the district court that the contractual language in *Chaffe* is closer to that in the appellants' note than the language in *Gavin*. The "we" in appellants' note does not present a parenthetical alternative to "I." We agree with *Chaffe* that "I, we, or either of us" gives the lender an option to seek recovery from any individual maker, from any combination of individual makers, or from the entire group. That is the essence of solidary liability, and the district court properly imposed it based on the language of the promissory note.

### III.

■ The Hintons sold their interest in the Eastway Group in September 1984. Under the Sale of Partnership Interest agreement the remaining partners agreed to "indemnify and hold the sellers [the Hintons] harmless" from all liabilities listed in Schedule A, attached to the agreement. The only liability listed in Schedule A is the

---

**2.** In a single terse reference in their briefs, appellants suggest that the district court should have followed the liability limits Alliance added to the note. However, appellants did not argue this point in the trial court and we decline to consider it for the first time on appeal.

"Loan Payment—Alliance Federal S & L $3,631,869.00."

This contract's words are "clear and explicit and lead to no absurd consequences." La.Civ.Code Ann. art. 1945 (West 1977). Accordingly, we must enforce them according to their plain meaning. The district court properly held that the Salvaggios must indemnify the Hintons for their portion of this judgment.

## IV.

For the reasons discussed above, the judgment of the district court is in all aspects affirmed.

AFFIRMED.