In the Matter of Sabria C. PORTON, Debtor.

Sabria C. PORTON, Plaintiff,

v.

John H. PECK, P. Ward Peck, III, and Sue H. Peck, Defendants.

Bankruptcy No. 81–1126.
Adv. No. 81–273.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

June 7, 1983.

See also 17 B.R. 172.

Jeffrey W. Warren, Bush, Ross, Gardner, Warren & Rudy, Tampa, Fla., for debtor/plaintiff.

C. Gary Moody, Gainesville, Fla., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Bankruptcy Judge.

THIS IS an adversary proceeding commenced by Sabria C. Porton, the Debtor in the above-styled Chapter 13 proceeding. The matter presently under consideration is the Debtor's claim to ownership of a fifty percent interest in certain real property located in Alachua County, Florida described in the complaint as the "Archer Road Property."

The facts relevant and controlling the matter under consideration, as developed at the final evidentiary hearing, can be briefly summarized as follows:

In 1972, the Debtor and John H. Peck formed a Florida corporation known as Peck & Porton, Inc. Each owned 50% of the stock in the corporation. Both the Debtor and John H. Peck were licensed Florida real estate brokers and formed the

corporation as a vehicle to conduct their real estate brokerage business. During the same time, the Debtor and John H. Peck also purchased several real properties individually, ostensibly as partners although no formal partnership was ever executed. During the period involved in this controversy, they acquired various parcels of real estate in Putnam and Alachua Counties, Florida. In each instance, the title to the real estate acquired was placed in the name of John H. Peck only. Although this adversary proceeding initially involved all of the properties purchased by them, the Debtor now admits to one-half ownership in all of the properties with the exception of the Archer Road property.

The Archer Road property was acquired on or about January 24, 1977. The consideration for the Archer Road Property was paid out of the proceeds of a loan obtained from Century National Bank of Coral Ridge which Bank also financed the construction of a build-to-suit restaurant known as "Weiner King." As noted earlier, only John H. Peck signed the mortgage. The Debtor contends that she assumed liability on the debt by signing the accompanying promissory note as co-maker with John H. Peck and his father, (Pl's Exh. # 7). An examination of the document reveals, however, that the Debtor is nowhere identified as a maker and on the last page of the mortgage, she is specifically identified only as a witness to the transaction.

In December of 1977, John H. Peck obtained a loan from the Gainesville University Shop, Inc. and to secure this debt, granted a mortgage on the Archer Road property and also a mortgage on another parcel not involved in this controversy. Some of the proceeds of the loan were used to complete the construction of the Weiner King Franchise facility. This loan was eventually satisfied from the proceeds of a sale of another parcel owned by John H. Peck and the Debtor.

On May 31, 1979, the Debtor borrowed $10,500 from Fred M. Cone and executed a ninety-day unsecured promissory note. In November of 1979, after the promissory note was due, John H. Peck executed a mortgage on the Archer Road property to secure payment of the note which was then due and owing to Fred Cone. While it is contended that the $10,500 borrowed by the Debtor was used to as payment of their joint debts, there is no evidence to substantiate the claim.

There is no doubt that the Debtor actively participated in the management of all phases of these property acquisitions. She was also involved in the management of the Archer Road Property. It is also without dispute that the Debtor did not receive a regular salary, but rather shared only in profits generated by the brokerage.

As noted above, Archer Road Property was originally improved by constructing a restaurant according to the specifications of Weiner King. Weiner King ultimately defaulted and John H. Peck filed a suit against Weiner King for damages which suit resulted in a judgment in favor of Weiner King, although the lease was cancelled. In July of 1978, the property was re-leased to Chicken Time, Inc. by John H. Peck and the building was converted to house a Kentucky Fried Chicken franchise operation.

On March 18, 1981, John H. Peck conveyed the Archer Road property to his brother and sister-in-law, P. Ward Peck, III, and Sue H. Peck. The transfer was conducted without the knowledge and consent of the Debtor. On June 26, 1981, the Debtor filed a Petition for Relief pursuant to Chapter 13 of the Bankruptcy Code and on July 16, 1981, this adversary proceeding was instituted. On February 1, 1982, John H. Peck himself filed a Voluntary Petition for Relief under Chapter 7 in the Northern District of Florida, thereby staying this adversary proceeding as it pertains to John H. Peck.

It is the Debtor's contention that she is entitled to establish her interest in the property on three different theories.

First, the Debtor contends that the subject property was partnership property which John H. Peck wrongfully conveyed to the Defendants who had knowledge of the

Debtor's ownership interest. Under this theory, the Debtor seeks the imposition of a constructive trust.

Second, the Debtor contends that the property which was conveyed from John Peck to his brother and sister-in-law is recoverable by the partnership pursuant to § 620.605(2) Florida States which states:

"(2) When title to real property is in the name of one or more, but not all, of the partners, and the public records do not disclose the right of the partnership, the partners in whose name the title stands may convey title to the property *if* the partner's act does not bind the partnership under the provisions of § 620.60(1) unless the purchaser or his assignee is a holder for value without knowledge that the partners have exceeded their authority in making the conveyance."

The third theory advanced by the Debtor is that the transfer of the Archer Road property by John H. Peck to his brother constitutes a fraudulent transfer under Chapter 726, Florida Statutes, and as such is voidable by creditors of John H. Peck, including the Debtor because John H. Peck is indebted to her.

 In order for the Debtor to prevail on any of the theories advanced, the Debtor must show (1) that a partnership, in fact, exists and (2) that the Archer Road property was an asset of that partnership. While the Debtor and John H. Peck never executed a formal partnership agreement, it is evident from the record that both parties viewed their business relationship as a partnership and in that context shared in the profits and participated in the management of their property acquisitions. It is a general principle of law that as between the parties to an alleged partnership, the existence of a true partnership relation depends on an agreement, whether implied or express, to operate as such. *A.J. Richey Corp. v. Garvey,* 132 Fla. 602, 182 So. 216 (1938). "Indeed, the intention of the parties is a 'primary consideration' and is 'the most important test as between the parties themselves' in determining whether there is a partnership." *Schilpp v. Schilpp,* 380 So.2d 573, 575 (Fla. 1st DCA 1980) (citing Fla. Jur.2d *Business Relationships,* §§ 455 & 459). In this case, there is no doubt that the Debtor and John H. Peck intended to be partners and ostensibly conducted themselves as such.

 This leaves for consideration whether or not the Archer Road property was an asset of the partnership. Section 620.595, Florida Statutes (1981) defines partnership property as "all property originally brought into the partnership or subsequently acquired by purchase on account of the partnership..." (2) "Unless a contrary intention appears, property acquired with partnership funds is partnership property." In addition, realty which is acquired in partnership business for partnership purposes will be considered partnership property even though it is titled in the name of one partner only. *Proctor v. Hearne,* 100 Fla. 1180, 131 So. 173 (1930).

 In this case, it is clear that the property was not brought into the partnership at its inception, but was acquired by John H. Peck at a later date. Thus, it is incumbent on the Debtor to establish that the property was either purchased on account of the partnership or acquired with partnership funds. The Archer Road property was purchased in the name of John H. Peck only and while this fact is not determinative, the Debtor has failed to show that either she or the partnership assumed any liability in conjunction with the purchase. The Debtor's signature on the promissory note bears no designation as maker and her signature on the mortgage which is located in the same position as that on the note, serves only to attest to the fact that John H. Peck executed the mortgage. Thus, she signed the mortgage as a witness only.

While there is no doubt that the business affairs of Peck and Porton were tangled and disorganized, the Debtor is unable to produce sufficient evidence that partnership funds were actually dedicated to the acquisition or improvement of the subject property. The Debtor was unable to present any business records tracking the

use of partnership funds and the evidence presented at trial can be viewed to support either the Debtor's position or the Defendant's position. Accordingly, the Debtor has failed to carry the burden of proof and the Court is bound to hold that the Archer Road property was owned by John H. Peck in his individual capacity.

Absent a finding that the subject property was partnership property, the Debtor is unable to prevail on any of the three theories advanced. It should be noted, however, that despite the Debtor's inability to present evidence sufficient to prevail in this proceeding, this ruling in no way operates as a bar to a claim of fraudulent transfer which she may advance as a creditor of the estate in the Chapter 7 case of John H. Peck which is currently pending in the Northern District of Florida.

A separate final judgment will be entered in accordance with the foregoing.