**In re PALM GARDENS NURSING HOME, Debtor.**

**In re PALM BEACH HOME FOR ADULTS, Debtor.**

**Bankruptcy Nos. 884–40599–18, 884–40601–18.**

United States Bankruptcy Court, E.D. New York.

March 4, 1985.

Kera & Graubard, New York City, for debtors.

Kramer, Levin, Nessen, Kamin & Frankel, New York City, for Lincoln Sav. Bank.

Joel Levy, New York City, for Herman Katz.

Finkel, Goldstein & Berzow, New York City, for Creditors' Committee.

## DECISION & ORDER

C. ALBERT PARENTE, Bankruptcy Judge.

In each of the above cases, Lincoln Savings Bank (the "creditor") has moved for relief from the automatic stay. It seeks to continue foreclosure actions against properties of the debtors on which it retains mortgages. The creditor argues alternatively that: 1) the stay is inapplicable because the debtors have no interest in these properties; or 2) the stay should be vacated for "cause."

## BACKGROUND

The debtors are two New York general Partnerships: the Palm Gardens Nursing Home ("Palm Gardens" or "Partnership") and the Palm Beach Home for Adults ("Palm Beach" or "Partnership").

### Palm Gardens

Palm Gardens is composed of two general partners: Israel Lefkowitz and Seren Lefkovits. In 1970 Palm Gardens began operating a proprietary nursing home on Avenue C in Brooklyn (the "Avenue C property"). Title to this property was held by the partners in their own names.

In June, 1975 the partners arranged to borrow four and one-half million dollars from the creditor, using the Avenue C property as collateral. A corporation owned and controlled by the partners and their family was used as the borrowing entity. According to the debtors, this was done to enable the creditor to take advantage of a New York law, which allows a creditor to charge a corporate borrower a higher interest rate than it can charge an individual or Partnership borrower.

On June 23, 1975 the partners transferred title to the property to the corporation and the corporation executed the mortgage agreement with the creditor. When the mortgage transaction was completed, the corporation transferred title back to the partners. There is no suggestion that the creditor was unaware of the title transfers.

The signing of the mortgage agreement did not change the partners' conduct with

respect to the property. Palm Gardens continues as the sole occupant. It has no lease and pays no rent. To the extent that mortgage payments have been made, Palm Gardens has made them. The property is scheduled as a Partnership asset on tax returns and on financial statements. Record title remains in the names of the partners.

### Palm Beach

Palm Beach operates a proprietary home for adults on premises located on Emmons Avenue in Brooklyn (the "Emmons Avenue" property). Since 1975 its partners have been Israel and Shoshana Lefkowitz.

Until April, 1976 title to the Emmons Avenue property was held by Oceanaire Building Corp. ("Oceanaire"), a New York corporation owned and controlled by the Lefkowitz family. In April, 1976 Oceanaire borrowed three and one-half million dollars from the creditor, using the Emmons Avenue property as collateral.

Under the terms of the Emmons Avenue mortgage, Oceanaire could freely transfer the Emmons Avenue property to Israel Lefkowitz personally, or to a Partnership in which Israel Lefkowitz was a partner. In April, 1976 Oceanaire transferred the property to Israel and Shoshana Lefkowitz where it remains to this date.

As with the Avenue C mortgage, the signing of the Emmons Avenue mortgage agreement did not change the parties' conduct with respect to the property. Palm Beach remains the sole occupant of the premises. It has no lease and pays no rent. It has made the mortgage payments on the Emmons Avenue property. Palm Beach carries the property on its tax returns and has included it in financial statements submitted to the creditor concerning the mortgage.

By March, 1984 both the Avenue C and Emmons Avenue mortgages were in serious default. The creditor commenced foreclosure actions in New York State Supreme Court naming as defendants the corporate borrowers, the general partners and the Partnerships. These actions were stayed when in April, 1984 Palm Gardens and Palm Beach filed for bankruptcy relief.

### DISCUSSION

The creditor contends that the mortgaged premises are not properties of the Partnerships, and therefore the automatic stay does not apply. The creditor posits its arguments on the fact that title to these premises is held in the names of the individual partners, and not by the Partnership entities. Consequently, it is asserted that the Partnerships do not have a property interest that would invoke the § 362 stay. The creditor is incorrect.

Pursuant to 11 U.S.C. § 109(d) of the Bankruptcy Reform Act (the "Code"), with certain limited exceptions not applicable here, any "person" may be a debtor under Chapter 11. "Person" is defined in § 101 to include a Partnership.

The filing of a petition by a partnership debtor, as with any other debtor under the Code, invokes the automatic stay authorized by § 362. Section 362(a)(4) of the stay restrains creditors from commencing or continuing lien enforcement actions against the property of the debtor's estate. State court foreclosure proceedings such as the one the creditor seeks to continue are covered by this provision. 2 Collier on Bankruptcy, ¶ 362.04 at 362–33 (15th ed. 1984).

Where the debtor is a partnership, the automatic stay only restrains actions against the partnership or the property of the partnership's estate, see § 362(a)(4). Unless the partners personally file for bankruptcy relief, the automatic stay does not restrain actions against them or their property. Under the Code, a partnership is considered a separate and distinct entity from its partners. *In re Aboussie Bros. Construction Co.*, 8 B.R. 302, 303, 3 C.B. C.2d 684, 685–86 (Bankr.E.D.Mo.1981).

Pursuant to § 541(a)(1) the automatic stay protects the debtor's "equitable" as well as "legal" interests in property. The Code does not define "equitable" or "legal interest." In *In re Helmwood Apts.*, 2

B.C.D. 1151, 1154 (Bankr.N.D.Ga.1976), decided under the Code's predecessor, the Bankruptcy Act, the court held that these terms were to be given their usual meaning:

A "legal owner" is one in whome (sic) the legal title to real estate is vested, but subject to the rights of any equitable owner.... An "equitable owner" is one who is recognized in equity as the owner of the property because the real and beneficial use and title belong to him, although the bare legal title is vested in another.

Following the generally accepted rule that property interests are to be determined under state law, *see, e.g., In re Jenkins*, 13 B.R. 721, 723, 4 C.B.C.2d 1425 (D.Colo. 1981), the court held that under Georgia law, beneficial use, and not record title, determined whether a partnership had an interest in property:

[I]f real property is being used as part of the partnership business, then the property is part of the partnership's assets, irrespective of whose name the legal title is held.

*Helmwood Apts.*, 2 B.C.D. at 1154.

*Helmwood Apts.* was cited with approval by the legislative drafters of the Code, indicating that Congress intended that courts would look beyond 'bare legal title' to determine whether particular property was part of a partnership's estate.

Of course, all legal and equitable interests of the partnership in property as of the commencement of the case is property of the partnership's estate under 11 U.S.C. 541(a). This would include, for example, the beneficial interest of the partnership in property in which legal title is held by a partner. *See, e.g., In re Helmwood Apts.*

H.R.Rep. No. 95–595, at page 199; U.S. Code Cong. & Admin.News 1978, pp. 5787, 6159.

■ Recently the 7th Circuit, without discussing whether the partnership's interest was legal or equitable, held that under Illinois or California law record title was not decisive in analyzing whether a partnership had an interest in property. *In re K & L Ltd.*, 741 F.2d 1023, 1030 (7th Cir. 1984); *see also, In re Porton*, 30 B.R. 374 (Bankr.M.D.Fla.1983) (under Florida law a debtor partnership could demonstrate that property belonged to the partnership despite the fact that title was held in the name of the individual partners). Thus, based on the language of the statute, its legislative history, and ample judicial precedent it is clear that a court must look beyond record ownership to determine whether a partnership has an interest in property sufficient to invoke the automatic stay.

New York Partnership law is similar to the law of Georgia (*Helmwood Apts.*, 2 B.C.D. 1151), the law of Illinois (*K & L Ltd.*, 741 F.2d 1023), the law of California (*Id.*), and the law of Florida (*Porton*, 30 B.R. 374), *i.e.*, it looks beyond record title to determine whether a partnership has an interest in property.

Indeed, New York's Partnership statute expressly recognizes a Partnership's "equitable interest" in property nominally owned by its partners.

Where the title to real property is in the name of one or more or all the partners, or in a third person in trust for the partnership, a conveyance executed by a partner in the partnership name, or in his own name, passes *the equitable interest of the partnership* provided the act is one within the authority of the partner under the provisions of subdivision one of section twenty.

P.L. § 21.4 (emphasis supplied). The question of ownership is one of fact: "it may always be shown that property, title to which is taken in the name of individuals, is in truth and in fact partnership property." *Application of A & A Holding Corp.*, 116 N.Y.S.2d 265, 268 (S.Ct.N.Y.Co.1952).

Few reported New York cases involved disputes concerning a partnership's interest in property in which record title is held by the partners. Federal courts have held that where there is inadequate state decisional law, on an issue which must be de-

cided under state law, a federal court must look to the law of other jurisdictions with similar statutes, *Baxter v. Lancer Industries, Inc.,* 213 F.Supp. 92, 96 (E.D.N.Y. 1963); or to relevant federal law. *United States v. Hinton,* 543 F.2d 1002, 1011 (2d Cir.1976), *cert. denied Carter v. U.S.,* 429 U.S. 980, 97 S.Ct. 493, 50 L.Ed.2d 589 (1976).

Under the law of most jurisdictions, if partners hold property in their own names with the intent that it be partnership property, the partnership is deemed to have equitable title. *Helmwood Apts.,* 2 B.C.D. at 1155. In *Helmwood Apts.,* the court identified the factors courts have used to infer the partners' intent:

> The law seems virtually universal in all jurisdictions that the intention of the parties, as established by their actions with themselves and others, their oral statements, accounting, tax records and other records, must control the determination of whether the partnership itself controls, holds, possesses and, therefore, equitable (sic) owns the property held in an individual partner's name.

*Id.*

 In the cases at bar the court has examined the factors concerning the partners' intent with respect to the two properties. The court finds that in both cases the partners' conduct demonstrates that the partners intended that the property be held as Partnership property.

The court finds that the Partnerships' use of the premises is consistent with that of owner occupants and not of tenants. The Partnerships are the sole residents of the properties, but unlike most tenants, they have no leases and pay no rent. Like most owners, they have been making mortgage payments.

In addition, the partners have treated the property as Partnership property for tax and accounting purposes. They have scheduled the properties on the Partnerships' and not their personal tax returns, and have listed the property as an asset on Partnership financial statements, including statements filed with the creditor.

Lastly, there is no indication that the partners in any way deceived the creditor concerning their intentions with respect to the properties. Indeed the creditor has at all times been aware of the Partnership's interest in and use of the properties.

The court must also reject the creditor's argument that pursuant to § 362(d) it is entitled to relief from the automatic stay for cause. As "cause" the creditor repeats that the Partnerships have no interest in the mortgaged premises. No other cause was established. Since this court has found that the debtor Partnerships do indeed have an interest in the properties, this argument lacks merit.

Based upon the above findings and precepts of law, the creditors' motions are denied.

It is SO ORDERED.