**RESOLUTION TRUST CORPORATION as Receiver for Security Homestead Federal Savings Association**

v.

**SECURITY TOWN COMPANY.**

**RESOLUTION TRUST CORPORATION as Receiver for Security Homestead Federal Savings Association**

v.

**SECURITY TOWN COMPANY II.**

**RESOLUTION TRUST CORPORATION as Receiver for Security Homestead Federal Savings Association**

v.

**SECURITY TOWN COMPANY III.**

**Civ. A. Nos. 89–4056, 89–4494 and 89–4419.**

United States District Court, E.D. Louisiana.

Aug. 29, 1990.

---

James Alcee Brown, Julie E. Schwartz; Edward J. Gay, III, Liskow & Lewis, Walter C. Thompson, Jr., Sessions & Fishman, Anthony Paul Dunbar, Oswald Paul Sobrino, Federal Public Defender, New Orleans, La., for plaintiff.

Robert Fernand Shearman, R. Ray Orrill, Jr., Orrill & Shearman, New Orleans, La., for defendants.

Emile Louis Turner, Jr., Turner, Young & Hebbler, New Orleans, La., for movant.

ARCENEAUX, District Judge.

Before the Court is plaintiff Resolution Trust Corporation's ("RTC") Motion To Dissolve Injunctions. Because the positions asserted by the plaintiff have merit, the Court grants the motion and dissolves the injunctions entered by the state trial court before the removal of these cases to this Court.

*Background*

In December 1981, Wade T. Verges approached Security Homestead Association ("Security"), a federally chartered savings and loan institution, with a plan to build a shopping center and office condominium complex on a tract of land located in Orleans Parish bounded by Lake Forest Boulevard, Interstate Highway No. 10, Plaza Drive and the Citrus Canal ("Property"). The project ("project"), to be patterned after "Main Street" in the Walt Disney World amusement park, was to have two phases to be built on adjoining tracts of land.

On February 29, 1982, Security entered into a partnership agreement with Verges, creating a Louisiana partnership named Security Town Company ("STC I"). In the STC I partnership agreement, Security agreed to lend up to $1,400,000.00 to Security Town I to acquire the Property and finance the first phase of the project's construction, which Verges agreed to design and construct. Security and Verges possessed the sole ownership interests in Security Town I in 60% and 40% shares respectively. Construction began on the first phase of the project about March 1, 1982.

Security maintains that because Verges' reports about the first phase of the project were so glowing, it entered into a second partnership agreement with Verges on August 15, 1983, creating a Louisiana partnership named Security Town Company, II ("STC II"). In return for a 50% interest in STC II, Security agreed to lend the partnership as much as $2,250,000.00 to acquire the Property and to construct the second phase of the project. Verges, the only other STC II partner, having a 50% interest in this partnership, again assumed full responsibility for the design and construction of the second phase. Construction on this phase began about August 1, 1983.

On November 29, 1983, Security and Verges entered into a third partnership agreement, Security Town Company, III ("STC III"). Security agreed to lend up to $5,000,000.00 to STC III to acquire and improve property located in St. Tammany Parish as the third phase of the development. In fact, Security loaned approximately $520,000.00 to STC III to acquire the land.

Construction took place only as to phases one and two. Verges' duties encompassed all aspects of the design and building of both phases of the project. He budgeted the project, hired the architect, contracted the work, selected the subcontractors, selected materials, and hired and supervised the labor. As Verges submitted reports noting expenditures made, Security either paid them or reimbursed Verges for any outlays he made.

The RTC maintains that Verges, without disclosing this information to Security, hired as subcontractors on the project entities in which he had a controlling interest, that he did so at noncompetitively high prices and that he personally received commissions or profits from their contracting for work with STC I and II. It also claims that many of Verges' reimbursement requests did not, in fact, represent valid expenditures for the project. These abuses led to cost overruns on both projects that exceeded the budgets for both phases of the projects that Security and Verges agreed upon. Security claims that Verges exceeded the construction budget for phase two even though this part of the project was only 60% completed at the time Security ceased funding it for the aforementioned purported violations of the Security Town II agreement. ·

The RTC also alleges that Verges and his subcontractors used inferior materials and poorly constructed the structures built during both phases. As a result, when the condominium structures were sold, Security incurred further losses from certain tenants defaulting on their purchase obligations and others filing suit to rescind the sales based, in part, upon allegations of vices of construction. The RTC also contends that Verges and a company he controlled which he engaged to market the project's condominiums directed potential buyers to other developments that Verges controlled while operating out of offices in the project, i.e. that Verges used STC I and II assets to market these competing developments.

When the partnerships defaulted on payments due on the loans provided, Security filed three suits for executory process in the Civil District Court of Orleans Parish to foreclose on the collateral mortgages on the Property that secured the loans.[1] In

---

1. These three suits are:
 *Security Homestead Association v. Security Town Company*, No. 88–16027, Civil District Court, Parish of Orleans, Div. K.

The petition claims $172,929.29 in principal amount plus $23,054.24 in unpaid interest through June 30, 1988 plus 15% interest until paid plus attorneys' fees of 10% of all amounts

each case the trial court issued an order of seizure and sale pursuant to which the Sheriffs of Orleans and St. Tammany parishes seized the mortgaged property. In each case, however, Wade Verges, acting on behalf of all three partnerships, obtained preliminary injunctions against the seizure and sale of the Property. Security appealed all of these rulings.[2]

On May 11, 1989, while the appeals of the preliminary injunction rulings were pending, the Federal Home Loan Bank Board ("FHLBB") appointed the Federal Savings and Loan Insurance Corporation ("FSLIC") conservator for Security. On August 7, 1989, the FHLBB appointed FSLIC as receiver for Security in lieu of the FSLIC as conservator and chartered a new institution, Security Homestead Federal Savings Association ("SHFSA"). The FHLBB appointed FSLIC conservator of SHFSA. An Acquisition Agreement ("agreement") between the SHFSA and Security, also dated August 7, 1989, transferred Security's assets, including the three mortgages at issue in this litigation, to SHFSA. The Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA") abolished the FSLIC and created the RTC and the latter replaced the FSLIC as receiver and conservator of failed thrift institutions like SHA and SHFSA. 12 U.S.C. § 1441a(b)(1) and (6). The RTC as conservator for SHFSA was substituted as party plaintiff in all three proceedings[3]

and the suits were timely removed to this Court. This Court consolidated these actions.

The RTC now asks this Court to dissolve the preliminary injunctions entered by the state trial courts in these cases. Before reaching the merits of plaintiff's arguments on this score, the Court must first address a number of procedural challenges defendant has made to this Court's power to provide the relief the RTC seeks.

*Analysis*

**I. The Proper Forum**

Wade Verges, on behalf of the defendant partnerships, has challenged the RTC's power to remove this action to this Court since the case was pending before an appellate tribunal at the time of removal. This argument has two parts: first, Verges contends that the RTC's removal to this Court was ineffective since to the wrong forum. Second, even if removal to this Court is proper, Verges challenges this Court's power to vacate the injunctions issued by the state trial courts. Verges argues that this Court is subject to the doctrine that upon removal it must "take this case as it finds it" and simply enforce the preliminary injunctions entered. To do otherwise would mean that this Court is reviewing a court of coordinate jurisdiction's ruling and, in effect, operating improperly as an appellate court.

---

owed and court fees and costs. The state trial court entered a preliminary injunction against the seizure and sale of the property October 5, 1988 and the appeal of this ruling was filed November 14, 1988. The RTC was substituted as conservator for plaintiff September 11, 1989 and the case was removed to this Court September 12, 1989.

*Security Homestead Association v. Security Town Company II,* No. 88–16026, Civil District Court, Parish of Orleans, Div. E.

The petition claims $1,027,498.39 in principal due, $278,573 interest due through June 30, 1988 with interest accruing at the rate of 15% until paid, plus attorneys' fees of 10% of all amounts owed and court fees and costs. The state trial court preliminarily enjoined the sale of this land on October 28, 1988 and the appeal of this ruling was filed November 14, 1988. The RTC was substituted as conservator for plaintiff on September 19, 1989 and this case was removed to this Court October 13, 1989.

*Security Homestead Association v. Security Town Company III,* No. 88–14245, Civil District Court, Parish of St. Tammany, Div. C.

The petition claims a principal indebtedness of $524,518.55 and $316,405.50 in interest due through June 30, 1988 and accruing at the rate of 15% until paid plus attorneys' fees of 10% of all amounts found owing plus court fees and costs. The state trial court preliminarily enjoined the sale of the property at issue on November 18, 1988 and the plaintiff appealed this ruling November 24, 1988. The RTC was substituted as conservator for plaintiff September 21, 1989 and the action was removed to this Court October 10, 1989.

**2.** See footnote 1 for the dates that the state trial courts entered the injunctions and the RTC appealed these rulings.

**3.** See footnote 1 for the dates that the RTC was so substituted in each suit.

### A. RTC's Removal Power

■ Verges' contention concerning the proper forum upon removal ignores the FIRREA. The removal provision of FIRREA, 12 U.S.C. § 1441a(l)(3), provides:

REMOVAL AND REMAND—The [RTC] may, without bond or security, remove any such action, suit, or proceeding from a State court to the United States District Court for the District of Columbia, or if the action, suit, or proceeding arises out of the actions of the [RTC] with respect to an institution for which a conservator or a receiver has been appointed, the *United States district court* for the district where the institution's principal business is located (emphasis added).

The clear and unambiguous language of the statute contains no restrictions on the type of state court from which the RTC may remove a case in which it is a party ("The [RTC] may ... remove ... from *a* state court ...") (emphasis added) and explicitly specifies that such cases shall be removed to an appropriate federal district court. The Court's reading of this provision, the language of which is substantially similar to the FSLIC and Federal Deposit Insurance Corporation removal provisions, 12 U.S.C. § 1730(k)(1) and 12 U.S.C. § 1819 respectively, is supported by jurisprudence authorizing removal to federal district court of actions pending before state appellate tribunals at the time of removal. *See, Vernon Savings and Loan Association v. Commerce Savings and Loan Association,* 677 F.Supp. 495 (N.D.Tex.1988); *In re Savers Federal Savings and Loan Association,* 872 F.2d 963 (11th Cir.1989); *Federal Deposit Insurance Corporation v. Ritchie,* 646 F.Supp. 1581 (D.Neb.1986).

This reading is also supported by the fact that the Congress has demonstrated that it knows how to cabin explicitly the removal power of a federal agency if it chooses to do so. Member banks of the Federal Reserve are restricted, for example, to removing suits to which they are parties to "anytime before the trial thereof." 12 U.S.C.

§ 632. Because the RTC's removal power contains no such limit, and the language of § 1441a is unambiguous, this Court find that it is the proper federal forum to adjudicate these cases at this time.[4]

### B. This Court's Power To Reach The Merits

■ Verges' contention that this Court does not have the power to vacate or change the state trial courts' rulings is based primarily upon the doctrine of the law of the case. He says that it is well settled that a federal court must treat all the state court proceedings as if they had occurred in federal court. *See, Vernon Savings and Loan Association v. Commerce Savings and Loan Association,* 677 F.Supp. 495, 498 (N.D.Tex.1988).

■ The Court questions whether applicable authority supports the proposition that the law of the case doctrine even applies to preliminary orders in cases removed to federal court because by definition they cannot be determinations of the merits of the case. *See, Canaday v. Koch,* 598 F.Supp. 1139, 1151 (E.D.N.Y.1984). Assuming that this doctrine does apply to preliminary orders, however, it does not preclude this Court from deciding the RTC's motion. State court orders are not conclusive on the federal court after removal, 14A Wright and Miller, *Federal Practice and Procedure,* § 3738 and n. 25 (West 1985), and the law of the case doctrine does not preclude a federal court upon removal from granting any relief it deems appropriate, including reconsidering or reversing state court rulings, where a federal rule provides an avenue for such a determination. *Vernon Savings,* 677 F.Supp. at 698 (and cases cited therein.); *see e.g., Azzopardi v. Ocean Drilling and Exploration Co.,* 742 F.2d 890, 895 (5th Cir.1984). Because Federal Rule of Civil Procedure 65(b) provides that motions for preliminary injunction can be modified by a

---

4. Of course, § 1441a requires that suits can be removed only to a district court where the institution's principal place of business is located. Security's and SHFSA's principal place of business were within the Eastern District of Louisiana so that this district court is the proper one to which these cases should be removed.

trial court, this Court can appropriately rule on the motion now before the Court.

Neither the partnerships or Verges are prejudiced by this review, nor is it unfair to them. Louisiana state courts unquestionably have the power to modify or reverse injunctive relief they enter either upon motion of any party to a lawsuit or *sua sponte*. La.Code Civ.Pro. art. 3607 *et seq.* Consequently, this is not a situation where defendants are being subjected to the possibility of losing the relief granted them simply because of the new federal forum; they were subject to having to defend the injunction in the state trial court as well. In fact, by hearing plaintiff's motion, the Court is, in fact, "taking the case as it found it" and simply reviewing an order that is, by its nature and as the name denotes, reviewable by the entering court.

This decision is also consistent with analogous precedent. The Fifth Circuit Court of Appeals has upheld a federal trial court's reversal of a default judgment entered by a state court. *Azzopardi*, 742 F.2d at 895. Similarly, the Fifth Circuit has held that a federal trial court has the power to hear a Motion To Vacate under Federal Rule of Civil Procedure 60(b) in a case removed while on appeal after the state trial court had rendered judgment. *Northshore Development, Inc. v. Lee*, 835 F.2d 580 (5th Cir.1988). Surely a federal trial court has the power to review a preliminary ruling on removal if it can pass on challenges to final judgments.

## II. Verges' Bankruptcy

■ Verges filed a petition for bankruptcy protection under Chapter 11 on December 18, 1989. He argues now that this Court cannot grant the relief the RTC wants because 11 U.S.C. § 362 ("§ 362") automatically stays any action affecting the bankruptcy estate's assets without the express permission of the bankruptcy court to lift the stay as to the plaintiff's alleged rights to the Property. This contention has no merit here, however, because it is predicated upon an erroneous view of the disposition of the assets of terminated partnerships and misconstrues the relief that the RTC wants.

■ Both Verges and the RTC agree that the Property, and the improvements made to it, were owned by the partnerships STC I, STC II and STC III at the time the Property was acquired and the improvements built.[5] Verges contends that these partnerships expired, by the terms of the documents that created them, on February 24, 1987, August 15, 1988 and November 29, 1988 respectively. Thereafter, says Verges:

> it is clear that Wade T. Verges ... has an interest in the [Property] as an owner in indivision with the former entity known as Security Homestead Association or, at the very least, has an equitable interest in the [P]roperty, which would be adversely affected by foreclosure. (Civ.Act. No. 89–4056, Doc. 10, p. 6).

Therefore, his ownership interest in the Property is part of the bankruptcy estate he created and is thereby protected by the § 362 automatic stay from any steps to disturb this interest outside of the bankruptcy code procedures.

■ Applicable Louisiana codal provisions make clear, however, that Verges did not receive an ownership interest in indivision of the Property when the partnerships terminated because partnerships continue to exist for purposes of winding up their affairs. La.Civ.Code art. 2826 (West 1981) provides that a partnership is terminated by, among other things, the expiration of its term. La.Civ.Code art. 2828 (West 1981) ("Art. 2828") explains the effect of

---

5. This conclusion is also supported by the facts of this case. Immovable property acquired in the name of a partnership is owned by the partnership if at the time of acquisition the contract of partnership was in writing. La.Civ. Code art. 2806 (West 1981). Land, such as the Property, and the buildings built upon it, are immovables, La.Civ.Code art. 462 (West 1979), the parties do not dispute that STC, STC II and STC III were created by written documents (Civ. Act. No. 89–4056, Docs. 8 and 10) and that these documents existed at the time each partnership acquired its share of the Property (Id.). Consequently, the Property was owned at the time of acquisition by the three partnerships.

termination: "When a partnership terminates, the business of the partnership ends except for purposes of liquidation." Comment (a) to Art. 2828 indicates that this part of the codal provision means exactly what it says. La.Civ.Code art. 2830 (West 1981) reinforces this point by providing that "when a partnership terminates, the authority of the partners to act for it ceases, except with regard to acts necessary to liquidate its affairs."

■ Louisiana law of partnership and the federal bankruptcy code are consistent in this respect. Just as Louisiana partnerships are separate juridical personalities from their partners for the purpose of liquidation, La.Civ.Code art. 2834 (West 1981) ("Art. 2834"); *Edco Properties v. Landry*, 371 So.2d 1367, 1371–72 (and cases cited therein) (La.App. 3d Cir.1979),[6] partnerships are considered to be separate and distinct juridical entities from their partners under the bankruptcy code, *In re Palm Gardens Nursing Home*, 46 B.R. 685, 687 (Bankr.E.D.N.Y.1985); *In re Aboussie Brothers Construction Company*, 8 B.R. 302, 303 (Bankr.E.D.Mo.1981). Because the partnerships owned the Property at the time of acquisition, these owner-ship interests were never transferred before their termination and liquidation has not yet been completed, the partnerships now, as always, own the Property and its improvements, not the RTC or Verges. Consequently, Verges' interests in STC, STC II and STC III are not a part of the bankruptcy estate he created and the § 362 automatic stay that prohibits disturbing any assets of this estate does not preclude this *in rem* action against these partnership assets.[7]

## III. Maintaining Injunctive Relief

Having cut through the procedural undergrowth in this case, the Court can now address the merits of the RTC's motion: whether it is entitled to have the injunctions entered in these cases dissolved and be allowed to proceed with seizure and sale of the Property by executory process.

### A. *Verges' Standing To Represent Partnership*

■ To accurately answer this question, the Court focuses on the nature of these suits. The plaintiff in all three actions is the RTC, having assumed possession of three promissory notes secured by

---

6. Comment (a) to Art. 2834 explains that the purpose of maintaining the partnership's juridical personality post termination is to facilitate the liquidation process and to insure that "the fiduciary relationship between the partners and the partnership continues until final liquidation."

Of course, the plaintiff can be a creditor to STC, STC II and STC III, and can exert all rights of such a creditor, even though it is also a partner in the partnerships. *See*, La.Civ.Code art. 2811 (West 1981) ("A partner who acts in good faith for the partnership may be a creditor of the partnership for sums he disburses, and losses he sustains") and La.Civ.Code Art. 2833 (West 1981).

This fact disposes of defendants' argument that the plaintiff cannot prevail on the claims it asserts in these cases because any such debts were extinguished by confusion when the partnerships terminated. Extinguishment by confusion occurs only when the qualities of the obligee and obligor to a debt become united in the same juridical entity. La.Civ.Code art. 1903 (West 1985). Here, the partnerships exist for liquidation purposes so that the plaintiff, the lender and the owners of the Property, the partnerships, who are the borrowers, are separate juridical personalities. The borrower and the lender have not united, so there can be no confusion. La.Civ.Code arts. 2801, 1903 and 3411.

One of the purposes of maintaining the fiction of a partnership's existence after termination, says Comment (a) to Art. 2834, is to "permit the creditors to institute proceedings against the partnership itself." This is precisely what the plaintiff has done in these lawsuits.

7. Federal courts have developed a line of jurisprudence holding that bankruptcy debtors can enjoin a bankruptcy creditor from suing a third party to the bankruptcy action (as is the case here) under § 362 if the debtor proves the creditor is not pursing his legitimate right to collect from the third party but is, instead, using the action against the third party primarily to pressure the debtor. *In re Juneau's Builders Center, Inc.,* 57 B.R. 254, 258–59 (Bankr.M.D.La.1986); *In re Electronic Theatre Restaurants Corp.,* 53 B.R. 458, 462 (N.D.Ohio 1985).

Defendants have not argued that these consolidated actions against the partnerships are so directed and so the Court does not formally address it. The Court notes only that such an argument would seem to be hard to prove, at best, since the plaintiff's claims are directed against the Property and plaintiff has shown no interest in Verges's personal assets.

collateral mortgage notes paraphed "Ne Varietur" to be identified with their respective hand notes. These collateral mortgage notes are, in turn, secured by collateral mortgages on the Property.[8] These notes all obligated Security to loan certain amounts to the partnerships—STC I, II and III—and, by their terms, provide only for *in rem* liability for the debts. That is, Security's primary right to secure payment of the loans it made according to the promissory notes was to foreclose on the mortgages that secured the borrowers'—the partnerships'—obligation to repay the amounts loaned according to the promissory notes. As discussed earlier, the Property, the security for all the debts, is owned by the partnerships. Accordingly, Security named as party defendants in these cases only the partnerships—the owners of the Property. Neither of the individual partners—who are not primarily liable for the debts incurred by the partnerships—were joined as defendants in any of these lawsuits. In other words, these suits are correctly viewed as actions by a mortgagor asserting rights to foreclose on property serving as collateral for amounts allegedly loaned to three partnerships.

Viewed against this backdrop, Verges does not have standing to assert the defenses he has raised in these actions. Verges is not named as a party defendant in any of these lawsuits and he does not own "in indivision" any interest in the Property. He has the power to argue against lifting the injunction, then, only if he has the authority to represent STC I, II and III.

La.Civ.Code Ann. art. 2807 (West 1981) provides that "unanimity is required to ... terminate the partnership ..." and that "[d]ecisions affecting the management or operation of a partnership must be made by a majority of the partners, but the parties may stipulate otherwise." Verges and Security stipulated in the agreements forming STC I, II and III that "[t]he partners, acting together, shall have and possess full power and authority of administration and management of the affairs of this partnership ..." (STC I, II and II partnership agreements, Para. IX). It appears to the Court that Verges lacks the authority to assert the claims he has urged both in the state courts and here in opposing these foreclosure suits because they are claims that can only be asserted by executory process defendants—i.e. the partnerships—and the terms of the agreements creating the partnerships stipulate that he cannot take such actions alone. *See,* La.Code Civ. Pro. art. 2751 (West 1989); *McSwain v. Bryant,* 503 So.2d 605 (La.App. 4th Cir. 1987). The state courts' rulings entering injunctive relief implicitly rested on Verges' power to represent these partnerships in these actions and so were in error in this respect.

Even if Verges has standing to assert these claims, they fail to authorize maintaining the injunctions entered in these cases. The Court now addresses the specific defenses Verges has raised in all three actions.

### B. *Debts Extinguished*

 In all three actions, Verges has argued in favor of enjoining the seizure

---

**8.** Verges' argument that the RTC's motion must be denied because it has not adequately proven its right to enforce these notes is, at best, frivolous and borders on the absurd. In all three actions, the RTC filed as an exhibit to its removal papers copies of the order by which it purchased most of Security's assets in a bulk purchase and assignment agreement. (*See,* Doc. 1 in Civ.Act. Nos. 89–4056, 89–4419, 89–4494). This method of assuming control of a troubled savings and loan institution is common for the RTC and, as the Fifth Circuit has explained, is often the most effective, if not the only, way to protect the savings and loans, customers, creditors and ultimately, as the people of this country are now learning only too well, United States taxpayers when such institutions weaken. *See, Federal Savings and Loan Insurance Corporation v. Murray,* 853 F.2d 1251, 1257 (5th Cir. 1988). Further La.Code Civ.Pro.Ann. art. 2637(D) (West 1989) explicitly provides that the RTC's possession and right to prosecute on notes acquired in this manner, such as the ones now before this Court, need not be proved by authentic act but can be proved by affidavit. The affidavit of Henri Martinez, a staff attorney for the RTC, fully complies with this procedure (Doc. 15, Exh. 3) and authorizes the RTC's right to prosecute these lawsuits.

and sale of the Property because the debts represented by the promissory notes were extinguished. As to the promissory notes concerning STC I and II, Verges alleges that the debts were, or should have been, extinguished by the proceeds from selling or renting condominium units built during phases 1 and 2 of the project. Verges claims that Security (and RTC as its successor) have failed to comply with their obligation under the STC I and II partnership agreements to provide an accounting of these proceeds to Verges, as a partner in STC I and II, and to the partnerships; that since it was Security's obligation to keep such records, the RTC cannot now claim that the STC I and II loans have not been paid. As to the $524,518.55 loan Security made to STC III, the subject of the suit in Civ. Action No. 89–4419, Verges argues that the debt was extinguished because on November 30, 1983 Security agreed to lend STC III $5 million and that the parties "understood" that this amount would be used, in part, to extinguish the original debt.

None of these contentions has merit. As an initial matter, Verges has produced no evidence to show that either STC I or II have made any payments on the loans made to those two entities. As to Verges' argument that he cannot produce such evidence because he does not have it due to Security's failure to maintain such records and provide them to Verges as was Security's duty under both partnership agreements, the Court notes that such a claim, while perhaps cognizable in an ordinary proceeding aimed at resolving disputes between the partners, cannot be asserted in these executory process proceedings. The rights and obligations that Security and Verges owed to each other as partners in STC I, II and III are irrelevant to these *in rem* actions brought by Security as a *creditor* of the *partnerships* to enforce payment of *partnership debts* through seizing and selling *only* property belonging to the *partnerships*. See, e.g., *United Companies Mortgage & Investment of Lake Charles, Inc. v. Brown*, 303 So.2d 820, 823 (La.App. 3d Cir.1974).

Verges' extinguishment argument as to the debt STC III allegedly owes apparently relies on a misunderstanding that the Court finds incredible for a member of the Louisiana bar. The only promissory note executed by Security and STC III on November 30, 1983 in the amount of $5 million was the collateral mortgage note (Civ.Act. No. 88–4419, Doc. 4, Exh. B, P–2) that was pledged as security for the $524,518.55 promissory note (Id., P–1). The collateral mortgage note was, in turn, secured by an Act of Collateral Mortgage, dated November 30, 1983, on the Property (Id., P–3). The collateral mortgage note is paraphed "Ne Varietur" for identification with the Act of Collateral Mortgage.

These documents are all component parts of a security device called a collateral mortgage. According to the collateral mortgage regime, the promissory note represents the amount of funds Security was obligated to loan STC III (and that, in fact, it did loan), i.e. the amount of STC III's indebtedness (including principal, interest, fees and penalties as the promissory note provides). The pledge of the collateral mortgage note was the security for this promissory note. It established the maximum amount of funds Security could lend STC III that would be secured by the collateral mortgage without having to reissue it each time a new amount, represented by a new promissory note, might be loaned. The collateral mortgage note did not obligate Security to advance its face amount and this note cannot be used now to inhibit the RTC from enforcing repayment of the debt incurred by STC III.

C. *Prematurity*

Verges also argues in all three actions that the RTC's attempts to enforce the collateral mortgages at issue are premature. As to the debt allegedly owed by STC I, Verges argues that the RTC's failure to provide an accounting of loan disbursements and payments indefinitely extends the time for repayment so that loan repayment is not overdue now. As to the loan made to STC II, Verges asserts that the RTC has indefinitely extended the time for repayment by failing to meet its obli-

gation to fully fund the loan that Security obligated itself to provide to that partnership. Verges alleges that attempts to foreclose on the mortgage securing the loan to STC III are premature because Security indefinitely extended the repayment term.

■■■■■ As noted earlier, Verges' argument regarding Security's alleged duty to render an accounting is a personal claim that cannot be exerted in an executory process proceeding. As to the loans made to STC II and III, Verges has presented no evidence supporting his prematurity arguments. He has also provided no legal authority, and the Court could find none, supporting his proposition that failure to fully fund the loan made to STC II acts as an automatic extension of the repayment period. Because the claim made as to the STC III loan is not apparent from the face of the note or any Security records, it cannot be asserted against the RTC. *D'Oench, Duhme & Company v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942); *Federal Savings & Loan Association v. Murray*, 853 F.2d 1251, 1254 (5th Cir.1988).

### D. *Estoppel*

Verges also claims that the RTC is estopped from foreclosing on the mortgages securing these loans for a number of reasons. As to the loans to STC I and II, Verges claims that the RTC cannot maintain these actions because Security as creditor cannot sue itself as a partner. He also claims that Security and its successor misrepresented to Verges the manner in which the debts in those two suits would be extinguished since it allegedly told Verges that the proceeds of the sales of the condominiums would be used to extinguish the debts. Since the proceeds were apparently not so used, Verges continues, the RTC is estopped from proceeding. As to STC III, Verges reiterates his contention that Security's dual role as creditor and partner precludes foreclosure. He also alleges that the RTC, as a holder of the promissory note in question, is subject to the defense of failure of consideration and misrepresentation. The basis for these defenses is, again, that Security failed to fund the $5

million loan it obligated itself to provide to STC III, which Verges claims he was led to believe would extinguish the initial loan to STC III.

■■■■ For the reasons the Court gave earlier, the RTC is not precluded from asserting this action because of its dual role as creditor and partner since, first, such a role is condoned by the Civil Code as long as Security acted in good faith, La.Civ.Code Ann. art. 2811 (West 1981); second, Verges has alleged no grounds supported by law to indicate that Security did not act in good faith as a partner in STC I, II and III and third, Security/RTC is not suing itself in these proceedings since, as discussed earlier, the partnerships remain separate juridical entities from their partners until liquidated. The RTC's actions is against the partnerships, not itself.

Also for the reasons given earlier, Verges cannot maintain his misrepresentation and lack of consideration claims. Verges has presented no evidence to support them and to the extent that they may rely on material not evident on the face of the promissory notes or from documents from Security's files, they cannot be asserted against the RTC as provided by *D'Oench Duhme* and its progeny.

Finally, Verges "$5 million obligation" argument no more estopps RTC from enforcing the STC III debt *in rem* than it evinces an intent to extinguish this debt. The $5 million collateral mortgage note secured the $520,000.000 debt; it did not obligate Security to fund a loan for $5 million.

### E. *Executory Process*

Verges did not oppose Security's attempts to foreclose on any of these mortgages in state court by alleging that it failed to meet all legal requisites for invoking executory process. It does so for the first time now that the matter is before this Court, (Civ.Act. No. 89–4056, Doc. 14, p. 4), but only by again trotting out his confusion argument and slightly recasting his accounting argument.

■■■■■ For the reasons explained earlier in this minute entry, confusion does not

take place here because the qualities of the RTC as creditor have not merged with the RTC as a partner in STC I, II or III because these partnerships remain juridical entities separate and distinct from their creditor. The accounting argument must be rejected once again because this is a claim personal to Verges that cannot be asserted in this proceeding *via executiva.* Assuming that Verges could rightfully assert this argument on the partnerships' behalf and argue that the RTC's failure to account for amounts allegedly paid on the loans made to STC I and II make the amounts now owed on these loans uncertain, this would not be lawful grounds to maintain the injunctions against the seizure and sale of the mortgaged Property. This type of uncertainty is not one of the grounds provided in La.Code Civ.Pro. art 2751 (West 1989) for enjoining executory proceedings.[9] The only other basis for maintaining the injunctions in these cases, then, would be a showing that Verges will suffer irreparable injury if the injunctions are dissolved. La.Code Civ.Pro. art. 3601 (West 1969) ("Art. 3601"); *Pogo Producing Company v. United Gas Pipeline Company,* 511 So.2d 809, 811 (La.App. 4th Cir. 1987); *McSwain,* 503 So.2d at 608. Verges has failed to offer evidence showing that any loss he may suffer as a result of the foreclosures cannot be adequately compensated by monetary damages. Indeed, Verges has made a stab at calculating such damages in the reconventional demand he filed in a fourth action in which the RTC has sued Verges and other entities alleging damages arising from their conduct in connection with the partnerships' efforts to develop the Property (*See,* Civ.Act. No. 89–4056, Doc. 14, Exh. A, "Answer, Special Defenses And Reconventional Demand"). Accordingly,

IT IS ORDERED that the Resolution Trust Corporation's Motion To Dissolve Injunctions is GRANTED and that the injunctions now in effect in the following cases are hereby DISSOLVED:

1) *Resolution Trust Corporation, etc. v. Security Town Company,* Civil Action No. 89–4056, Section K, United States District Court for the Eastern District of Louisiana;

2) *Resolution Trust Corporation, etc. v. Security Town Company, II,* Civil Action No. 89–4494, Section K, United States District Court for the Eastern District of Louisiana;

3) *Resolution Trust Corporation, etc. v. Security Town Company, III,* Civil Action No. 89–4419, Section K, United States District Court for the Eastern District of Louisiana.

No hearing shall be held on this motion.

---

**9.** The Court is assuming, solely for purposes of this point, that Verges, a nonparty to any of these actions, can assert defenses available un-

der art. 2751 even though its language limits its availability to "[t]he defendant[s] in the executory proceeding[s]."