CHUTZ, J.
*642 Defendants-appellants, Richard Joseph Sork and Michelle Constance Sork Ryan, appeal the trial court's default judgment awarding to their step-mother, plaintiff-appellee, Priscilla Schoen Sork, one-half of monthly mortgage payments she made on a loan secured by immovable property that they and their siblings own in indivision with her as well as one-half of her repair and maintenance expenses for the immovable property. For the following reasons, we reverse in part and affirm as amended in part.
FACTUAL AND PROCEDURAL BACKGROUND
Priscilla, as the surviving spouse of defendants' father, William Joseph Sork, rejected, renounced, and disclaimed the "usufruct for life or remarriage" in 2009. According to the terms of the judgment of possession,[1] in lieu of the usufruct, the parties agreed that 50% ownership of the home located at 19399 S. Fitzmorris Road in Covington, Louisiana was vested in Priscilla; and the other 50% ownership was vested in William's four adult children, with each sibling receiving 12.5% of the ownership of the home.[2] The judgment of possession stated that Priscilla personally assumed liability of one-half of the remaining mortgage balance and that the four Sork siblings assumed the remaining one-half of the mortgage balance jointly.[3]
On June 13, 2016, Priscilla filed a petition for reimbursement and for specific performance naming each of the four Sork siblings as defendants. In the petition, Priscilla averred that she had made all the mortgage payments without reimbursement. She also alleged that she had paid all the expenses for repairs and maintenance of the home without any reimbursement.
On August 26, 2016, acknowledging that the petition had been served on only Richard and Michelle, Priscilla moved for a preliminary default judgment against the two of them. On September 12, 2016, the trial court ordered entry of the preliminary default in the minutes of court.
Priscilla filed a motion to confirm the preliminary default against Richard and Michelle on September 15, 2016. Therein, she averred that she had paid a total of $70,566.31 in mortgage payments and $32,392.45 for maintenance and necessary repairs to the property. After a hearing on October 20, 2016, the trial court confirmed the preliminary default and signed a judgment, which concluded that Richard and Michelle were responsible for one-half of the total reimbursement due for mortgage payments and one-half of all necessary repairs and maintenance for the home. Richard and Michelle were ordered to pay to Priscilla the sum of $35,283.15, which represented one-half of the total mortgage payments of $70,566.31. They were also ordered to pay to Priscilla the amount of $16,196.22, which was one-half of her total *643 maintenance and repair expenditures of $32,392.45. Richard and Michelle were ordered to pay judicial interest on the amounts owed to Priscilla as well as attorney fees in the amount of $7,500.00. Richard and Michelle appeal.
DISCUSSION
When a default judgment is before a court of appeal, our review is restricted to a determination of the sufficiency of the evidence offered in support of the judgment. That determination is a factual one governed by the manifest error standard of review. The reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court's finding but must determine from a review of the record in its entirety whether the trial court's finding was clearly wrong or manifestly erroneous. Whitney Bank v. NOGG, L.L.C., 2015-1399 (La. App. 1st Cir. 6/3/16), 194 So.3d 819, 822-23.
Confirmation of a preliminary default is similar to a trial and requires, with admissible evidence, proof of the demand sufficient to establish a prima facie case. The elements of a prima facie case are established with competent evidence, as fully as though each of the allegations in the petition were denied by the defendant. Environmental Safety and Health Consulting Services, Inc. v. Reynolds Nationwide, Inc., 2014-0787 (La. App. 1st Cir. 12/23/14), 168 So.3d 593, 594.
Open Account
Priscilla claims that the sums due constituted an open account and, therefore, under La. C.C.P. art. 1702B(3), her affidavit of correctness was prima facie proof sufficient to support the confirmation of the preliminary default.[4] We disagree.
La. R.S. 9:2781(D) provides that an open account "includes any account for which a part or all of the balance is past due, whether or not the account reflects one or more transactions and whether or not at the time of contracting the parties expected future transactions." An open account necessarily involves an underlying agreement between the parties on which the debt is based. Gulfstream Services, Inc. v. Hot Energy Services, Inc., 2004-1223 (La. App. 1st Cir. 3/24/05), 907 So.2d 96, 100, writ denied, 2005-1064 (La. 6/17/05), 904 So.2d 706.
Nothing in the evidence Priscilla offered in support of her entitlement to a default judgment established the intent or agreement by the parties to extend credit or create an open account for either one-half of the mortgage payments she made or for one-half of the expenses she incurred in repairs and maintenance to the house. Accordingly, lacking any evidence to support a finding of the existence of an open account between the parties, the trial court's award of attorney fees in the amount of $7,500.00, which was based solely on La. R.S. 9:2781, is reversed.
Lacking evidence of an open account, Priscilla could not rely on La. C.C.P. art. 1702B(3) to establish a prima facie case of entitlement to relief. As such, Priscilla's claims are based on conventional obligations. Therefore, in accordance with the provisions of La. C.C.P. art. 1702B(1), Priscilla was required to submit affidavits and exhibits annexed thereto which contain facts sufficient to establish a prima facie case.[5]
*644 One-half of the Mortgage Payments
Annexed to Priscilla's motion for a preliminary default were the judgment of possession and copies of her receipts for payments on the mortgage loan, totaling $70,566.31. It is undisputed and the judgment of possession establishes that Priscilla was responsible for only one-half of the mortgage loan payments and that the other one-half of the mortgage loan payments were the responsibility of the four Sork siblings.
In her affidavit of correctness, Priscilla attested that she had expended $70,566.31 for the mortgage without reimbursement from any of the four Sork siblings. And close scrutiny of the judgment of possession alongside with the mortgage payment receipts, each of which states "Payment-Mortgage," shows that the account numbers match.[6] Given that under the terms of the judgment of possession Priscilla assumed liability for one-half the mortgage balance and the four Sork siblings jointly assumed liability for the other one-half, Priscilla established she was entitled to reimbursement for the amounts she paid toward the mortgage.
On appeal, Richard and Michelle maintain the trial court erred in concluding they were liable for $35,283.15, i.e., the entire one-half of the reimbursement owed to Priscilla by all four of the Sork siblings. They urge that the judgment of possession fails to establish that the four siblings agreed to be solidarily liable for the mortgage balance. As such, Richard and Michelle contend they are only liable for their virile share.
When there is more than one obligor named in the same contract, the obligation it produces may be either joint or solidary. La. C.C. art. 1786. When several persons join in the same contract to do the same thing, it produces a joint obligation on the part of the obligors. La. C.C. art. 1788. An obligation is solidary for the obligors only when each obligor is liable for the whole performance. See La. C.C. art. 1794. The solidarity of an obligation is not presumed; a solidary obligation arises from the clear expression of the parties' intent or from the law. La. C.C. art. 1796.
Priscilla has not averred that the four Sork siblings are solidarily liable by imposition of law. Instead, she relies on the judgment of possession to establish her right to reimbursement for the mortgage payments she made. After naming each Sork sibling individually, the judgment of possession states that they "assume the remaining one half of the mortgage balance jointly ." (Emphasis added.) Priscilla offered nothing to establish a clear expression of an intent by the four Sork siblings to be solidarily liable for their collective one-half of the mortgage balance. Thus, she failed to prove a solidary obligation existed between the four siblings. As such, the obligation between the Sork siblings is a joint one, and the liability of each is limited to his/her virile share. See Hardy v. Whitney , 480 So.2d 766, 771 (La. 3d Cir. App. 1985) (relying on Johnson v. Jones-Journet, 320 So.2d 533, 536 (La. 1975) ); see also Gavin v. Superior Applicators, Inc., 484 So.2d 792, 794-95 (La. App. 1st Cir.), writ denied, 487 So.2d 439 (La. 1986) (promissory note signed by multiple makers *645 which recited that "I (We) promise to pay" created joint, rather than solidary, liability on part of makers, each of whom was responsible only for his virile share). Therefore, we amend the judgment to order Richard and Michelle to each pay one-fourth of $35,283.15, or $8,820.79 each, to Priscilla.
Reimbursement for One-Half of the Repairs and Maintenance
Richard and Michelle challenge the trial court's determination that Priscilla was entitled to an award of $16,196.22 for one-half of the expenses she expended on repairs and maintenance of the home. They contend that any award for necessary repairs should have been offset by the value of Priscilla's use of the home. They also suggest that some of the receipts that Priscilla offered in support of her claim were not for necessary repairs and should not have been subject to reimbursement.
The use and management of the thing held in indivision are determined by agreement of all the co-owners. La. C.C. art. 801. Except as otherwise provided in Article 801, a co-owner is entitled to use the thing held in indivision according to its destination, but he cannot prevent another co-owner from making such use of it. La. C.C. art. 802. A co-owner who on account of the thing held in indivision has incurred necessary expenses, expenses for ordinary maintenance and repairs, or necessary management expenses paid to a third person, is entitled to reimbursement from the other co-owners in proportion to their shares. If the co-owner who incurred the expenses had the enjoyment of the thing held in indivision, his reimbursement shall be reduced in proportion to the value of the enjoyment. La. C.C. art. 806. A co-owner in exclusive possession may be liable for rent, but only beginning on the date another co-owner has demanded occupancy and has been refused. McCarroll v. McCarroll , 96-2700 (La. 10/21/97), 701 So.2d 1280, 1290.
Pretermiting a discussion on whether the record supports a finding that Priscilla had the enjoyment of the home, there is nothing to support a finding that Richard, Michelle, or their other two siblings demanded occupancy of the home and was refused by Priscilla. Therefore, the trial court did not err in failing to reduce the amount of reimbursement that the Sork siblings owed for necessary repairs and maintenance that Priscilla made to the home by any use she may have enjoyed.
Richard and Michelle assert that the installation of granite countertops, a reconfigured entry/new door, repainting, new carpeting, and new shutters were not shown to have been necessary expenses such that as co-owners they are required to reimburse Priscilla.
According to the 1990 Revision Comment (b) of Article 806, the definition of necessary expenses and their distinction from useful and luxurious expenses are expressed in La. C.C. arts. 527 and 528. Under Article 527, "necessary expenses" include those that are "incurred for the preservation of the thing." As explained in Comment (b) to Article 528, "useful expenses" are those that result in an enhancement of value, but are not needed for the preservation of the property. Article 806 expressly permits a co-owner reimbursement for the "necessary expenses." But unlike Article 528, Article 806 does not provide for reimbursement of "useful expenses," instead allowing a co-owner reimbursement of "expenses for ordinary maintenance and repairs" in addition to her necessary expenses.
In establishing her prima facie case, Priscilla offered no explanation, either by way of affidavit or testimony, of why she chose to install the granite countertops, reconfigure the entry/doorway, repaint, or *646 procure new carpeting and new shutters. And she produced nothing to establish either the condition or the age of any of these items. She simply attested that she had incurred expenses in repairs and maintenance and attached copies of the receipts demonstrating the amounts "expended ... for necessary repairs to the home."
Of the expenses awarded to Priscilla in the default judgment that Richard and Michelle have challenged, none appear to be clearly and obviously for the preservation of the home. Thus, they cannot be necessary expenses. And without a basis to establish a need for replacement, the quality of the item replaced, or its age, the record is devoid of any evidence to permit an inference that these expenses were usual or routine such that they may be called ordinary. Accordingly, we conclude that the record lacks sufficient evidence to support reimbursement for these expenses.
The trial court awarded expenses totaling $32,392.45. The invoices attached to Priscilla's affidavit show that she expended a total of $23,182.69 on the expenses Richard and Michelle challenge as not reimbursable under Article 806.[7] Therefore, the total amount of expenditures for which Priscilla offered sufficient evidence of necessary expenses as well as for expenses for ordinary maintenance and repairs was $9,209.76.
Under Article 806, Richard and Michelle owe Priscilla reimbursement "in proportion to their shares." Under the terms of ownership set forth in the judgment of possession, as one-half owner of the home, Priscilla is responsible for 50% of $9,206.76, or $4,603.38, of the proven expenses, and Richard and Michelle, who each have a 12.5% interest in the home, are each responsible for $1,150.84. Accordingly, the trial court's default judgment is amended to order Richard and Michelle to respectively reimburse to Priscilla the amount of $1,150.84 each.
DECREE
For these reasons, the portion of the default judgment, which awards attorney fees in the amount of $7,500.00, is reversed. That portion of the default judgment, which orders Richard and Michelle to reimburse Priscilla "one-half ... of the mortgage payments currently made" in the amount of $35,283.15, is amended to order Richard to pay to Priscilla the amount of $8,820.79 and Michelle to pay to Priscilla the amount of $8,820.79, i.e., their respective virile shares, for reimbursement of the mortgage payments she made on the home. That portion of the default judgment, which orders Richard and Michelle to reimburse Priscilla the amount of $16,196.22, is amended to order: Richard to pay to Priscilla the amount of $1,150.84 and Michelle to pay to Priscilla the amount of $1,150.84. In all other respects, the default judgment is affirmed.[8] Appeal costs are assessed one-half against plaintiff-appellee, Priscilla Schoen Sork and one-half against defendants-appellants, Richard Sork and Michelle Sork.
REVERSED IN PART; AMENDED AND, AS AMENDED, AFFIRMED IN PART.
Whipple, C.J., dissents in part for reasons assigned.
WHIPPLE, C.J., dissenting in part.
*647 To the extent that the majority opinion determines that the Sork siblings' liability for one-half of the mortgage balance is limited by the judgment in the underlying succession proceeding to a virile share, I respectfully dissent in part, as I would affirm the trial court's finding that the Sork siblings are solidarity liable.
In this case, the judgment of possession setting forth and memorializing the parties' respective rights and obligations expressly states that the Sork siblings "assume the remaining one-half of the mortgage balance jointly ." (Emphasis added.) Thus, as previously agreed to by the parties in the judgment, the obligation between the four Sork siblings is a joint one. To determine the effect of a joint obligation on the obligors, the inquiry is whether the joint obligation is divisible or indivisible. If a joint obligation is divisible, neither obligor is bound for the whole performance; rather, each joint obligor is bound to perform only his portion. LSA-C.C art. 1789. However, on the other hand, if the joint obligation is indivisible, the joint obligors are subject to the rules governing solidary obligors. LSA-C.C, art. 1789. Thus, as here, where the obligation is an indivisible obligation, the obligee, at her choice, may demand the whole performance from any of the joint and indivisible obligors. See LSA-C.C. art. 1795 ; Berlier v. A.P. Green Industries, Inc., 2001-1530 (La. 4/3/02), 815 So.2d 39, 47. Moreover, an obligation is divisible when the object of the performance is susceptible of division, and an obligation is indivisible when the object of the performance, because of its nature or the intent of the parties, is not susceptible of division. LSA-C.C, art. 1815.
By concluding that Richard and Michelle were liable for $35,283.15, i.e., the one-half owed to Priscilla as reimbursement for payment due and assumed by all four of the Sork siblings jointly, the trial court implicitly found that the joint obligation to reimburse Priscilla was indivisible. Because the judgment of possession states that Priscilla assumed "one-half" the mortgage balance and that Richard and Michelle, along with their two brothers, John, and Michael, (with each Sork identified individually) assumed "the remaining one-half of the mortgage balance jointly," the trial court correctly interpreted the judgment in accordance with the parties' intent and stipulation that the parties intended that the obligation between the Sork siblings was owed jointly by them and was indivisible. Had the parties intended that their assumption of the mortgage obligation was to be divisible, the judgment of possession in the underlying succession suit could easily have so stated and specified that Richard assumed 12.5%, Michelle assumed 12.5%, John assumed 12.5%, and Michael assumed 12.5% of the remaining one-half of the mortgage balance, but did not do so (as was stated in the judgment with the expression of each Sork's respective ownership interest ). See Berlier v. A.P. Green Industries, Inc., 815 So.2d at 47 ("[I]f the parties had intended for the obligation to be divisible, then one would reasonably suspect that they would have determined each defendant's pro rata portion, and each defendant would be bound for a sum certain"). Thus, because, under the succession judgment, the obligation was assumed jointly, Priscilla had the right to demand the whole performance from any of the joint and indivisible obligors, see LSA-C.C. art. 1795. In my view, considering the terms of the judgment in the succession proceeding which Priscilla sought to enforce, the trial court correctly ordered Richard and Michelle to pay Priscilla the amount of $35,283.15, representing the reimbursement due her for their half of the total *648 mortgage payments she has made on the house.
In sum, on the record before us, and considering the language used in the judgment of possession as agreed upon by the parties, I find no legal error or abuse of discretion in the trial court's determination of these defendants' liability. As recognized in Berlier v. A.P. Green Industries, Inc., 815 So.2d at 47, "Although money, by its nature, is divisible, LSA-C.C. art. 1815 provides that an object can also be indivisible because the parties so intended. Thus, even where an object by its nature may be rendered in partes (such as a lump sum settlement for $450,000.00), it must be performed as a whole where it is indivisible because of the parties' intent." (Citing Saul Litvinoff, The Law of Obligations in the Louisiana Jurisprudence 599 (1979) ).
Accordingly, I respectfully dissent in part.

Although the original judgment of possession was subsequently amended, the modification did not change any of the terms of the parties' agreement insofar as Priscilla's renunciation of the usufruct. Therefore, throughout the opinion, we refer to both the original and the amended judgments of possession collectively as "the judgment of possession."

Priscilla also received $20,000.00 in cash and a vehicle, and the Sork siblings received additional immovable property, a utility trailer, and all of the other property belonging to William.

The judgment of possession referenced "Chase" as the mortgagee of the mortgage balance that the parties assumed. Other evidence further identified the mortgagee as "JP Morgan Chase Bank, N.A."

La. C.C.P. art. 1702B(3) states in relevant part, "When the sum due is on an open account..., an affidavit of the correctness thereof shall be prima facie proof. "

La. C.C.P. art. 1702B(1) states:
When a demand is based upon a conventional obligation, affidavits and exhibits annexed thereto which contain facts sufficient to establish a prima facie case shall be admissible, self-authenticating, and sufficient proof of such demand. The court may, under the circumstances of the case, require additional evidence in the form of oral testimony before entering a final default judgment.

The judgment of possession sets forth the entire account number and the mortgage payment receipts show the last four digits of the account number.

The expense of: installing the granite countertops was $4,291.65; reconfiguring the entryway/doorway was $2,800.00 and $1,500.00; repainting the living room and kitchen (walls and trim) was $2,000.00; new carpeting was $2,115.04; and new shutters was $10,476.00 for a total of $23,182.69.

Because Priscilla failed to show that she had an open account with the Sork siblings, she has not proven that she is entitled to judicial interest prior to June 13, 2016, the date of judicial demand.